641 A.2d 195

**Raymond J. VAN HORN et al.**

v.

**ATLANTIC MUTUAL INSURANCE COMPANY.**

**No. 20, Sept. Term, 1990.**

Court of Appeals of Maryland.

April 12, 1994.

Reconsideration Denied June 8, 1994.

I. Elliott Goldberg and David A. Sherbow (Jane A. Canter, Charles E. Chlan, David D. Levine and Jill Coleman, James J. Temple, Anello and Temple, Baltimore, all on briefs), I. Elliott Goldberg (Christine A. Malanga, Baltimore, both on brief), for petitioners.

Martin H. Freeman, David A. Sherbow, Baltimore, as amicus curiae, for Maryland Trial Lawyers Ass'n.

Roger O. Robertson (A. Douglas Owens, Owens & Robertson, P.A., Baltimore, all on brief), for respondent.

James J. Doyle, III, James J. Doyle, Jr., Doyle & Craig, PA, Baltimore, as amicus curiae, for American Ins. Ass'n.

Argued Oct. 10, 1990 before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE * and CHASANOW, JJ.

Reargued May 7, 1992 before MURPHY, C.J., ELDRIDGE, RODOWSKY, McAULIFFE,* CHASANOW, KARWACKI and BELL, JJ.

ELDRIDGE, Judge.

The issue in this case is whether Maryland's statutory motor vehicle insurance regulatory scheme has changed an insurer's common law contract right to void *ab initio* an automobile liability insurance policy when the insured applicant had made a material misrepresentation in the application for the policy.

## I.

In early October 1985 Raymond J. Van Horn signed and submitted, through an insurance agency, an application to the Atlantic Mutual Insurance Company for an automobile insurance policy on a 1983 Toyota automobile owned by Mr. Van Horn. Mr. Van Horn was listed on the application as the only driver of the automobile. In a section of the application containing a series of questions with boxes to mark "Yes" or "No," one of the questions was whether the "driver listed above" has "a physical impairment," and it was answered by an "X" in the "No" box. Atlantic Mutual issued a policy for a six-month period beginning October 4, 1984, and it was subsequently renewed at intervals of six months through April 4,

---

* McAuliffe, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

1987. The policy carried personal injury liability limits of $100,000/$300,000.

On January 14, 1987, the insured automobile, being driven by Raymond Van Horn on Reisterstown Road in Baltimore County, collided with a bicycle ridden by Douglas Wines. Van Horn was arrested by the investigating police officer and charged with driving while intoxicated. At the time, Van Horn told the investigating officer that he had taken medication for his epilepsy about two hours earlier. Douglas Wines was injured in the accident and was treated at the University of Maryland Hospital, which is part of the University of Maryland Medical System Corporation.

Atlantic Mutual was notified of the accident, began an investigation, and, in the course of the investigation, obtained on February 9, 1987, a copy of the police accident report. The insurer first received information that Van Horn had epilepsy from the accident report. Three days later, on February 12, 1987, Atlantic Mutual obtained a detailed statement from Van Horn in which he described his history of "seizures" which began in 1983. Thereafter Atlantic Mutual obtained Van Horn's medical records.

Shortly after Atlantic Mutual commenced its investigation, Douglas Wines filed with the insurer a claim for compensation under the liability provisions of Van Horn's policy. The insured, Raymond Van Horn, made a claim under the collision coverage of his policy, and that claim was paid by Atlantic Mutual a few days after it was made. No other claims under the policy have been made.

In early March 1987, Atlantic Mutual sent to Van Horn a "reservation of rights" letter, although in late March 1987, Atlantic Mutual renewed Van Horn's policy for another six-month period from April 4, 1987, to October 4, 1987. Then, according to the testimony of an Atlantic Mutual official, in late April 1987 Atlantic Mutual reached a "decision that it was a policy that should be void *ab initio.*" Atlantic Mutual sent a letter to Van Horn dated April 28, 1987, which stated that the insurer has "determined that there does indeed exist a materi-

al misrepresentation on your application," that the "withheld information" concerning Van Horn's "epileptic condition" would "have significantly influenced the decision as to whether to issue you a policy of automobile liability insurance," and that

"you are hereby notified your policy of automobile liability insurance with the Atlantic Mutual Insurance Company is rescinded as of the date of its issuance and will be treated as void from its inception. Hence, there is no coverage available to you for any claims arising out of the January 14, 1987 motor vehicle accident.

"A full refund of all premium payments which you have made since the issuance of the Atlantic Mutual Insurance Company's policy will be refunded to you in the near future."

The following day, April 29, 1987, Atlantic Mutual commenced the present action by filing in the Circuit Court for Baltimore County a complaint for a declaratory judgment, requesting a declaration that the insurance policy "is void from its inception, and has been properly rescinded by Atlantic because of the material misrepresentation by Van Horn in his application for insurance." Named as defendants were Raymond J. Van Horn, Douglas Wines, University of Maryland Medical System Corporation, and the Maryland Medical Assistance Program, Maryland Department of Health and Mental Hygiene. The last named defendant had paid a portion of the medical expenses incurred by Douglas Wines. Thereafter the defendant Van Horn filed a counterclaim for a declaratory judgment that the insurance policy was valid at the time of the accident and that Atlantic Mutual's attempt to void the policy *ab initio* was improper.

After the commencement of this action, Atlantic Mutual, on May 21, 1987, sent Van Horn a check for $1,190.86, purporting to reflect "all premium payments" paid to Atlantic Mutual for the policy. Van Horn has not cashed the check. Van Horn did, however, obtain an automobile insurance policy from another insurer, the Maryland Automobile Insurance Fund.

In contesting Atlantic Mutual's request for a declaration that the insurance policy was void *ab initio*, the defendants made various arguments in the circuit court. It was claimed that the answer on the insurance application was not a misrepresentation because Van Horn's condition did not amount to a physical impairment, that if the statement constituted a misrepresentation it was not material, and that Atlantic Mutual had waived any right which it otherwise may have had to void the policy. Van Horn also contended that he had fully disclosed his epileptic condition to the insurance agency during August and September 1985 when the agency was attempting to persuade him to switch his automobile insurance from his prior insurer to Atlantic Mutual, that the agency and not Van Horn filled out the application, and that, in this regard, the agency was acting as "Atlantic Mutual's agent and/or representative." Finally, the defendants argued that voiding a motor vehicle insurance policy *ab initio* is contrary to the Maryland statutory scheme regulating motor vehicle insurance and providing for compulsory insurance on all Maryland automobiles.

At the nonjury trial, there was medical evidence about Van Horn's history of epilepsy, testimony from the insurance agency concerning the circumstances of the application, evidence regarding the State Motor Vehicle Administration's procedures if an epileptic applies for a new or renewal driver's license, and testimony from several Atlantic Mutual officials concerning the company's procedures, policies with respect to insuring epileptics, and the circumstances of the present case.

Among other things, the evidence at trial disclosed that when Van Horn renewed his Maryland driver's license in May 1984, one of the questions on the renewal application was as follows: "Do you have any physical or mental disability, other than vision, which may affect your driving?" Van Horn answered the question in the negative. A representative from the State Motor Vehicle Administration ("M.V.A.") testified that if the question had been answered in the affirmative, the M.V.A.'s Medical Advisory Board would have contacted "the medical doctors involved and request[ed] a ... prognosis of

the individual ..., and the Medical Advisory Board would then make a decision as to whether or not [Van Horn] would be licensed...."

Ted Brockman, Atlantic Mutual's personal lines manager and formerly an underwriting manager, testified that the insurer has no rule that it will not insure epileptics. The witness seemed to indicate that Atlantic Mutual will issue an automobile insurance policy to Marylanders with "physical impairments" if they are cleared by the M.V.A.'s Medical Advisory Board. At the conclusion of the trial, Atlantic Mutual's counsel conceded that "Atlantic will insure them [persons with epilepsy] if they meet [the] requirements of M.V.A."

Thereafter, the circuit court issued an opinion and declaratory judgment which declared that the insurance policy was not void from its inception and that Atlantic Mutual was not entitled to rescind the policy *ab initio*. The circuit court found "that Van Horn knew of his epileptic condition by April 1983, the time of his first seizure." The court further found that Van Horn made a misrepresentation on the application for insurance when he gave a "No" answer to the question whether he had a physical impairment. Nevertheless, the circuit court found that Atlantic Mutual had failed to establish that the misrepresentation was material. The court quoted the test for materiality set forth in *Life Insurance Co. v. Samis*, 172 Md. 517, 528, 192 A. 335, 339 (1937), namely whether the facts concealed from the insurer " 'were of such probative force as in all reasonable probability, if brought to the knowledge of the company, would have precluded the issuance of the policy.' " The circuit court also pointed out that the insurer "carries the burden of showing that the policy would not have been written if the fact of Van Horn's epileptic condition had been disclosed." [1] The circuit court then found

---

1. *See Life Insurance Co. v. Samis*, 172 Md. 517, 528, 192 A. 335, 340 (1937) (" 'ordinarily it is the province of the jury to determine the falsity and materiality of the representations made in an application for [an] insurance policy, and the burden is upon the defendant [insurer] to

that Atlantic Mutual failed, in two respects, to persuade the court that the misrepresentation was material. First, the court pointed out that if Van Horn had answered the question on the insurance application correctly, thereby precipitating an investigation by Atlantic Mutual, there was nevertheless no evidence to show that the policy would not have been issued when it was discovered that Van Horn had not disclosed his condition to the M.V.A.[2] Second, the trial court pointed out that, if Van Horn's condition had been disclosed to the M.V.A., there was no evidence to show that the M.V.A. would have refused to renew Van Horn's driver's license.[3] In light of its finding that the misrepresentation was not shown to have been material, the circuit court in its opinion did not reach the alternative arguments relied on by the defendants.

---

satisfy the jury of the truth of these defenses,' " quoting *Met. Life Ins. Co. v. Jennings*, 130 Md. 622, 625, 101 A. 608, 609 (1917)).

2. The circuit court explained its finding as follows:
"In this context the testimony of Ted Brockman, an underwriter for Atlantic, showed that if Van Horn had disclosed his epilepsy on the application, rather than rejecting the application outright, further investigation would have ensued to determine Van Horn's status with the Motor Vehicle Administration. Brockman implied, without being definitive, that Atlantic would be interested in determining whether Van Horn had been cleared by the Medical Advisory Board. Brockman did not state, nor did Atlantic produce evidence to show, that a policy would not have been written if it was found on investigation that Van Horn had not disclosed his epilepsy to the motor Vehicle Administration."

3. The court thus stated:
"Atlantic did produce evidence indicating that there was no disclosure by Van Horn to the Maryland Motor Vehicle Administration of his epilepsy, but failed to go any further. Specifically, Atlantic failed to prove that such a disclosure, in Van Horn's situation, would have resulted in action by the Medical Advisory Board and/or the Motor Vehicle Administration to deny driving privileges to Van Horn. This gap in the evidence presented by Atlantic was compounded by additional testimony of Mr. Brockman, indicating that individuals with impairments, including epileptics, are insurable risks and that such an impairment would, if accepted, be underwritten with no increase in premium or rate."
In this connection, *see* Maryland Code (1977, 1992 Repl.Vol.), §§ 16–208(a)(3) through 16–208(a)(5) of the Transportation Article.

Atlantic Mutual appealed to the Court of Special Appeals which, in an unreported opinion, held that the misrepresentation was material and reversed the circuit court's declaratory judgment. The intermediate appellate court in its opinion initially rejected Van Horn's argument that there was no misrepresentation because his epilepsy did not constitute a "physical impairment." Turning to the question of materiality, the Court of Special Appeals was of the view that Atlantic Mutual had met its burden of proof, that it was neither necessary nor practical for the insurer to show that the M.V.A.'s Medical Advisory Board would have denied driving privileges to Van Horn if his epilepsy had been disclosed, and that "since epilepsy can cause at least momentary loss of consciousness, on the very face of it the existence of such condition is material to the risk involved in an automobile liability insurance policy." Finally, the Court of Special Appeals held that the Maryland statutes regulating motor vehicle insurance, including the requirement for compulsory automobile insurance, were not "intended to abrogate the common law right to rescind an insurance contract for a material misrepresentation that induced the insurer to issue the policy."

The defendants filed in this Court a petition for a writ of certiorari, presenting the following three questions:

"1. Should the burden of proof as to whether a misrepresentation made by the insured, Raymond J. Van Horn in his application for insurance was material have been on the insurer, Atlantic Mutual?

"2. Was the decision of the trial judge clearly erroneous when he found that the misrepresentation made by Raymond J. Van Horn in his application for insurance was not material?

"3. Assuming arguendo that there was a material misrepresentation in Van Horn's application for insurance, should the policy be held not to be void *ab initio* as against Wines, an injured third party?"

This Court granted the petition, received briefs and heard oral argument. Thereafter, we ordered that the case should be reargued, and that reargument should include consideration of the following additional questions:

"1. Is the law that generally permits rescission of an insurance contract for first-party coverage without the necessity of showing a causal relationship between the misrepresentation and the loss applicable to third-party motor vehicle insurance coverage cases, or should rescission be permitted as to third parties only upon a showing of such causal relationship?

"2. Has Maryland's compulsory motor vehicle insurance law abrogated the common law right of an insurer to rescind an automobile insurance policy for fraud or material misrepresentation after an accident covered by the policy has occurred?

"3. If so, should the right of rescission be denied:

a) as to third-party coverage only, and not as to first-party coverage?

b) only to the limits of financial responsibility required by State law, or as to the entire policy coverage?

"4. Is the rescission of a motor vehicle insurance policy subject to the provisions of §§ 234A, 240AA, and 240D of Article 48A of the Maryland Code?"

We further ordered the parties to submit supplemental briefs on the additional questions.

## II.

To some extent, the additional questions quoted above go beyond what is presented by the facts of this case. Thus, there was no exploration at the trial as to whether there was a causal relationship between Van Horn's epilepsy and the accident resulting in the injury to the defendant Douglas Wines, and the circuit court made no finding with regard to the matter. Moreover, the only claims under the insurance policy involved in this litigation are those made by the defendant Wines and the defendants who rendered assistance to

Wines (the University of Maryland Medical System Corporation and the Maryland Medical Assistance Program). This litigation does not concern any claim under the policy made by or on behalf of Van Horn. Atlantic Mutual has not sought a return of the money which it had paid on Van Horn's collision claim. Furthermore, Van Horn has not sought reinstatement of the policy from and after April 1987, and he has made no complaint about any failure of Atlantic Mutual to follow the policy termination procedures set forth in the Maryland Insurance Code. *See* Code (1957, 1991 Repl.Vol., 1993 Cum.Supp.), Art. 48A, § 240AA.

■ For the reasons set forth below, we hold that an insurer's common law right to void *ab initio* an automobile insurance policy, when the applicant had made a material misrepresentation in the application for the policy, has been statutorily abrogated with regard to claims of persons not involved in making the misrepresentation. Furthermore, the common law right to void the policy under these circumstances has been abrogated as to the entire policy coverage. We need not and do not reach any of the other questions presented by the certiorari petition or by our supplemental order. Thus, whether the material misrepresentation would furnish a valid defense to a claim made by Van Horn is a question not presented by this case, and we do not decide it.

### A.

Prior to January 1, 1973, under Maryland common law contract principles, an insurer was ordinarily entitled to void *ab initio* a motor vehicle insurance policy because of a material misrepresentation in the application for the policy. *See Josey v. Allstate Ins. Co.,* 252 Md. 274, 250 A.2d 256 (1969); *Erie Insurance v. Lane,* 246 Md. 55, 227 A.2d 231 (1967). *Cf. Stumpf v. State Farm Mut. Auto. Ins.,* 252 Md. 696, 251 A.2d 362 (1969) (automobile insurance policy was issued under Maryland's former Assigned Risk Plan, and the statute expressly preserved the right "of recision for fraud or material misrepresentation in procuring the insurance").

The General Assembly, however, by Ch. 73 of the Acts of 1972, effective January 1, 1973, extensively revised the Maryland law concerning motor vehicle insurance and compensation for injuries caused by motor vehicles.[4] As this Court has pointed out, "[b]eginning in 1972 ... the General Assembly substantially changed the public policy of this State with regard to motor vehicle insurance and reparations for damages caused by motor vehicle accidents." *Jennings v. Government Employees Ins.*, 302 Md. 352, 357, 488 A.2d 166, 168 (1985). *See Lee v. Wheeler,* 310 Md. 233, 238, 528 A.2d 912, 915 (1987) (the statutory provisions enacted and revised by Ch. 73 "reflect a substantial, legislatively-mandated change" in Maryland public policy); *Nationwide v. USF & G,* 314 Md. 131, 133–136, 550 A.2d 69, 70–71 (1988). The significant changes brought about by Ch. 73 of the Acts of 1972 were designed to achieve one major public policy objective. That objective was to ensure, as far as practicable, that there would be continuous insurance policy coverage, or approved self-insurance, applicable to injuries incurred in automobile accidents. *See Pennsylvania Nat'l Mut. v. Gartelman,* 288 Md. 151, 154, 416 A.2d 734, 736 (1980) ("This legislative policy has the overall remedial purpose of protecting the public by assuring that operators and owners of motor vehicles are financially able to pay compensation for damages resulting from motor vehicle accidents").

Foremost among the changes brought by the 1972 legislation was compulsory motor vehicle insurance. Ch. 73 of the Acts of 1972, § 2, enacted an entirely new "Required Security" subtitle to the Motor Vehicle Laws which, with subsequent amendments, is now codified as §§ 17–101 through 17–110 of the Transportation Article. Under §§ 17–103 and 17–104, the owner of a motor vehicle registered or required to be registered in Maryland must maintain a motor vehicle insurance

---

4. The provisions of Ch. 73 of the Acts of 1972, as supplemented by later statutes, are primarily codified in Code (1977, 1992 Repl.Vol., 1993 Cum.Supp.), §§ 17–101 through 17–110 of the Transportation Article, and Code (1957, 1991 Repl.Vol.), §§ 234B, 240AA through 242, 243 through 243L, 539 through 547 of the Insurance Code (Art. 48A).

policy on the vehicle, or self-insurance approved by the M.V.A., which contains liability coverage and other statutorily mandated types of coverages in specified minimum amounts. The M.V.A. may not issue or transfer the registration for a motor vehicle unless the M.V.A. has satisfactory evidence that the vehicle is insured. Under § 17–106, if insurance on any vehicle "terminates or otherwise lapses at any time," the registration of the vehicle is "suspended automatically," and the owner is required to "surrender all evidences of that registration to the" M.V.A. Moreover, if a vehicle becomes uninsured during its registration year, the M.V.A. is entitled to assess the owner monetary penalties (§ 17–106(e)). In addition, § 17–107(a) makes it unlawful for a person to drive an uninsured motor vehicle knowing or having reason to know that it is uninsured, and makes it unlawful for the owner of an uninsured vehicle knowingly to permit another person to drive it. A violation of § 17–107 is a misdemeanor punishable by a fine of $1,000 and imprisonment for not more than one year for a first offense and imprisonment for not more than two years for a subsequent offense (§ 27–101(h)).

The General Assembly in Ch. 73 of the Acts of 1972 also created the Maryland Automobile Insurance Fund (MAIF), a state-owned automobile insurance company. The "purpose of [MAIF] is to provide automobile insurance to those eligible persons who are unable to obtain it in the private market" (§ 243B(a)(3) of the Insurance Code). Thus, MAIF is generally required to issue, upon the payment of the appropriate premium, an automobile insurance policy to one who has either (1) attempted in good faith to obtain a policy from private insurers and been refused a policy by two different private insurers or (2) had an automobile insurance policy "cancelled or nonrenewed for any reason other than nonpayment of premiums, by a private insurer authorized to write such a policy in this State" (§ 243B(a)(1)(iii)).

Furthermore, Ch. 73 of the Acts of 1972 added to the Insurance Code new § 240AA, setting forth detailed procedures which must be followed before an insurance company can cancel, refuse to renew, refuse to underwrite, or reduce

the coverage of a motor vehicle insurance policy. Section 240AA requires the insurance company to send the insured notice in triplicate of the proposed cancellation, nonrenewal, etc., at least 45 days before the effective date of the proposed action. The notice must set forth the reasons for the proposed action in "clear and specific" language, must inform the insured of the right to replace the insurance through MAIF, and must inform the insured of his right to file a protest with the Insurance Commissioner and to request a hearing before the Commissioner by signing two copies of the notice and sending them to the Commissioner. At the hearing before the Commissioner, "the burden of persuasion shall be upon the insurer to demonstrate" that the termination or reduction in coverage is permitted by the standards set forth in the Insurance Code. *See* § 234A(a). Underscoring the legislative policy that there be an insurance policy in force at all times on Maryland vehicles, § 240AA provides that if the insured files a protest with the Insurance Commissioner, the insurance policy shall remain in force until a final decision on the protest (§§ 240AA(b)(7), 240AA(e)).

As previously indicated, the 1972 legislation mandated that specified coverages either be offered by insurers or be included in every insurance policy on a Maryland motor vehicle and in every motor vehicle insurance policy issued, sold or delivered in Maryland. Among these required coverages are Personal Injury Protection Benefits (PIP) which are "medical, hospital and disability benefits" payable without regard to fault and covering persons "who are injured in any motor vehicle accident" (Art. 48A, §§ 539(b), 540).[5] As Chief Judge Murphy pointed out for the Court in *Travelers Ins. Co. v. Benton*, 278 Md. 542, 545, 365 A.2d 1000, 1003 (1976), "[t]he statutory plan making PIP coverage mandatory on a 'no-fault basis' plainly requires that all motor vehicles registered in

5. As the statutory provisions are currently worded, PIP coverage must be included in every motor vehicle insurance policy unless, under certain enumerated conditions, the named insured affirmatively waives in writing this coverage. *See* Code (1957, 1991 Repl.Vol., 1993 Cum. Supp.), Art. 48A, § 539.

Maryland shall carry such insurance." And as observed by Judge Davidson for the Court, "[t]he primary purpose of this [PIP] requirement is to assure financial compensation to victims of motor vehicle accidents without regard to the fault of [the] insured or other persons," *Pennsylvania Nat'l Mut. v. Gartelman, supra,* 288 Md. at 154, 416 A.2d at 736. Furthermore, one of the statute's "fundamental aims is the speedy provision of PIP benefits without the lengthy delays entailed by ... litigation." *Insurance Com'r v. Prop. & Cas. Corp.,* 313 Md. 518, 532, 546 A.2d 458, 465 (1988).

Also included among the required coverages is uninsured motorist insurance. *See* Art. 48A, § 541(c). This is designed to provide insurance policy coverage for innocent individuals (1) injured in accidents with Maryland motor vehicles driven by tortfeasors who, in violation of Maryland law, have failed to maintain the compulsory liability insurance or (2) injured in accidents with other uninsured tortfeasors such as drivers of out-of-state vehicles. *See, e.g., Waters v. USF & G,* 328 Md. 700, 710, 616 A.2d 884, 888 (1992); *Forbes v. Harleysville Mutual,* 322 Md. 689, 697, 589 A.2d 944, 948 (1991); *Lee v. Wheeler, supra,* 310 Md. at 238, 528 A.2d at 915; *Pennsylvania Nat'l Mut. v. Gartelman, supra,* 288 Md. at 157, 416 A.2d at 737; *State Farm v. Md. Auto. Ins. Fund,* 277 Md. 602, 605, 356 A.2d 560, 562 (1976).

Finally, Ch. 73 of the Acts of 1972 repealed the former Maryland Automobile Insurance Plan for Assigned Risks, which was an earlier statutory scheme designed to assist individuals in obtaining motor vehicle insurance policies from insurance companies. *See Laws of Maryland 1972,* Ch. 73, at 290–293. One of the provisions of the Assigned Risk Plan, which was expressly set forth in and repealed by Ch. 73, read as follows (*id.* at 292):

"(v) No eligible applicant may be refused or cancelled by the insurer for underwriting reasons, provided that nothing in this paragraph shall prevent ... recision for ... material misrepresentation in procuring the insurance."

No comparable provision, preserving a right of rescission for a material misrepresentation in procuring the insurance, was inserted in the new statutory provisions enacted in place of the Assigned Risk Plan. While, as previously discussed, the new legislation also addressed the matter of termination, there was no exception preserving a right of rescission for a material misrepresentation in the application.

This Court has pointed out that "there is harmony in the legislative design of" Maryland's current statutory sections regulating motor vehicle insurance. *Lee v. Wheeler, supra,* 310 Md. at 240, 528 A.2d at 916. The provisions for compulsory insurance on every Maryland automobile are made feasible by the creation of MAIF as an insurer of last resort. If a private insurer terminates a policy, MAIF is available to issue a new policy. If an insurer's termination of a policy is contested, § 240AA requires that the policy stay in effect until the contest is resolved. The mandatory uninsured motorist coverage helps close a gap in liability coverage caused by irresponsible tortfeasors who violate the compulsory insurance law. The PIP provisions are designed to provide some coverage by insurance policies regardless of fault. These statutory provisions complement each other in achieving the legislative purpose that there be continuous insurance policy coverage for injuries incurred in motor vehicle accidents. Recognition of a common law contract right to void a motor vehicle insurance policy *ab initio* is utterly inconsistent with this legislative purpose.

Thus, in the present case, to uphold Atlantic Mutual's retroactive cancellation of the insurance policy would mean that Van Horn's automobile was uninsured from April 1985 through April 1987, with no means available, at the time of the insurance company's action, to remedy the problem of no insurance for two years. This would flatly violate the statutory requirement that one "shall maintain" the insurance "during the registration period" (§ 17–104(b) of the Transportation Article). Compulsory insurance statutory provisions, at the very least, would seem to abrogate any contract right to

render a Maryland registered motor vehicle uninsured for a two year period.

A retroactive cancellation of a motor vehicle insurance policy is also inconsistent with the policy termination procedures and requirements set forth in §§ 234A and 240AA, which permit only prospective cancellation, require that the insurance policy stay in force if the cancellation is protested, and contemplate the availability of an insurance policy from MAIF if the cancellation goes into effect, thereby guaranteeing continuous motor vehicle insurance coverage.[6] The 1972

---

**6.** Atlantic Mutual argues that there is a difference between "cancellations," which are said to be prospective only, and "rescissions," which are retroactive. The Insurer contends that "rescissions" are not "cancellations" and that, for this reason, they are not governed by § 240AA. Neither the language of the Maryland cases nor the enactments by the General Assembly support such a distinction in the meaning of the terms.

Most of the opinions in this Court, in referring to an insurer's retroactive termination of an insurance policy because of a material misrepresentation in the application, use neither term; instead, they refer to "voiding the policy" or "avoiding the policy" or "declaring the policy void." *See, e.g., Monumental Ins. Co. v. Taylor,* 212 Md. 202, 211, 129 A.2d 103, 107 (1957); *Schloss v. Life Ins. Co.,* 177 Md. 191, 200, 9 A.2d 244, 248 (1939); *Life Insurance Co. v. Samis, supra,* 172 Md. at 519–520, 192 A. at 336; *Loving v. Mut. Life Ins. Co.,* 140 Md. 173, 181, 117 A. 323, 326 (1922); *Bankers' Life Ins. Co. v. Miller,* 100 Md. 1, 6, 59 A. 116, 117–118 (1904). Nevertheless, the Court has frequently used the terms "cancel" or "cancellation" to refer to a retroactive termination of an insurance policy based upon a material misrepresentation. *See, e.g., Stumpf v. State Farm Mut. Auto. Ins.,* 252 Md. 696, 712, 251 A.2d 362, 370 (1969); *Josey v. Allstate Ins. Co.,* 252 Md. 274, 278–279, 250 A.2d 256, 259 (1969); *Silberstein v. Life Insurance Co.,* 189 Md. 182, 186–188, 190, 55 A.2d 334, 337, 339 (1947). In *Josey v. Allstate Ins. Co., supra,* 252 Md. at 279, 250 A.2d at 259, the Court stated, in another context, that it would not give a "restrictive" meaning to the terms "cancel ... insurance." The Court of Special Appeals has held that a termination of an automobile insurance policy because of material misrepresentations in the application is a "cancellation" and that the insurer must "compl[y] with the procedural dictates of Md.Code Ann., Art. 48A, § 240AA." *Erie Ins. v. Insurance Comm'r,* 84 Md.App. 317, 322, 579 A.2d 771, 773 (1990).

The General Assembly, in the former Assigned Risk Plan, Art. 48A, § 243(4)(v), which was repealed by Ch. 73 of the Acts of 1972, *Laws of Maryland 1973* at 292, stated that "recision for ... material misrepresentation in procuring the insurance" was an exception to the provision that insureds could not be "cancelled by the insurer for underwriting

repeal of the provision in the former Assigned Risk Plan, which had preserved an insurer's right to rescind a motor vehicle insurance policy for a material misrepresentation in procuring the insurance, and the legislative decision not to insert a similar provision in the new statutory plan, confirms that, by Ch. 73 of the Acts of 1972, the General Assembly intended to allow only prospective termination of motor vehicle insurance policies. In this manner, the insurance could be immediately replaced and continuous motor vehicle insurance could be maintained.

In accordance with the legislative design that there be insurance policy coverage for automobile accident injuries, this Court has generally held invalid insurance policy limitations, exclusions and exceptions to the statutorily required coverages which were not expressly authorized by the Legislature. Attempts by insurance companies, purporting to exercise contract rights, to avoid the public policy of compulsory motor vehicle insurance with mandated coverages, have repeatedly been rejected by this Court. *See, e.g., Forbes v. Harleysville Mutual, supra,* 322 Md. at 698, 589 A.2d at 948; *Larimore v. American Ins. Co.,* 314 Md. 617, 622, 626, 552 A.2d 889, 891, 893 (1989); *Nationwide v. USF & G, supra,* 314 Md. at 141, 550 A.2d at 74; *Gable v. Colonial Ins. Co.,* 313 Md. 701, 548

---

reasons," thus indicating that "recision" is a form of "cancellation." In addition, the specific limitations upon an insurer's ability to terminate an automobile insurance policy are set forth in both § 234A(d) and § 240AA, and this Court has stated that both sections must be read together, *Gov't Employees Ins. v. Ins. Comm'r,* 273 Md. 467, 482–483, 330 A.2d 653, 661–662 (1975). Section 234A(d)(1) refers to "cancel, refuse to renew or *otherwise terminate* coverage for any automobile insurance risk...." (Emphasis added). The term "otherwise terminate" would clearly encompass a retroactive cancellation. Moreover, the statutory provision delineating eligibility for a MAIF insurance policy includes one who has had a private policy "cancelled or nonrenewed for any reason," Art. 48A, § 243B(a)(1)(iii). The word "cancelled" in this section obviously contemplates one whose policy has been retroactively terminated.

Finally it is noteworthy that, at the trial in the present case, Atlantic Mutual's witnesses, including its personal lines manager Brockman as well as one of its senior underwriters, repeatedly referred to the Insurance Company's retroactive termination of Van Horn's policy as a "cancellation" or as a decision "to cancel the policy back to inception."

A.2d 135 (1988); *Lee v. Wheeler, supra,* 310 Md. at 238–242, 528 A.2d at 915–917; *Jennings v. Government Employees Ins., supra,* 302 Md. at 358–359, 488 A.2d at 169–170; *DeJarnette v. Federal Kemper Ins. Co.,* 299 Md. 708, 725, 475 A.2d 454, 463 (1984); *Nationwide Mutual Ins. v. Webb,* 291 Md. 721, 730, 436 A.2d 465, 471 (1981); *Pennsylvania Nat'l Mut. v. Gartelman, supra,* 288 Md. at 156, 416 A.2d at 737; *State Farm v. Md. Auto. Ins. Fund, supra,* 277 Md. at 605, 356 A.2d at 562. Atlantic Mutual's attempted exercise of a contractual right to rescind a motor vehicle insurance policy is similarly contrary to the statutory scheme and must be rejected.

### B.

Our conclusion in this case is reinforced by the uniform course of judicial decisions in other states having compulsory motor vehicle insurance. In situations where a motor vehicle insurance policy is compelled by law, where the statutes do not expressly preserve the right of rescission *ab initio,* and where claims of innocent parties are involved, the cases throughout the country, with apparent unanimity, take the position that rescission *ab initio* is inconsistent with the statutory scheme. Among the jurisdictions with statutory enactments similar to Maryland's, some cases rely on the statutory requirement that insurance be maintained, some cases rely on provisions similar to §§ 234A and 240AA restricting the right to cancel, and some cases rely on both types of statutes. Nevertheless, all of the cases reach the same result, namely that rescission is impermissible to defeat claims like those involved in this case.

The reasoning underlying this uniform view was set forth more than 30 years ago by New York's appellate division in *Teeter v. Allstate Insurance Company,* 9 A.D.2d 176, 192 N.Y.S.2d 610 (1959), *aff'd,* 9 N.Y.2d 655, 212 N.Y.S.2d 71, 173 N.E.2d 47 (1961), and it has been adhered to by courts throughout the country ever since. The *Teeter* opinion initially stated the issue before the court as follows (9 A.D.2d at 179–180, 192 N.Y.S.2d at 614–615):

"The defendant [insurer] maintains that it had not cancelled the policy but had rescinded the policy *ab initio* in the exercise of its common-law right to rescind the policy because of fraud.

"This contention presents sharply the question ... whether the common-law right of rescission *ab initio* for fraud survived the adoption of the [compulsory insurance] statute or whether the statutory *method of terminating* coverage on notice ... is the sole and exclusive method by which insurance coverage ... can be terminated. We think that the latter alternative is the correct one."

The court then held that rescission *ab initio* violated the statutory cancellation provisions, saying (9 A.D.2d at 180, 192 N.Y.S.2d at 615):

"The provision of the section for a 10–day notice of termination makes it impossible to have *ab initio* rescission. While the provision does not take away the right to rescind for fraud, it restricts its operative effect. The rescission cannot be made effective retroactively as it could be at common law; it can be made effective only prospectively, as of a date not less than 10 days after the service of the prescribed notice."

Turning to the compulsory insurance requirement, the New York court continued (9 A.D.2d at 180–181, 192 N.Y.S.2d at 615–616):

"It is impossible to reconcile the existence of a right to rescind *ab initio* with the general scheme of compulsory insurance law. The purpose of the statute is to assure, so far as possible, that there will be no certificate of registration outstanding without concurrent and continuous liability insurance coverage. . . .

"But it would be obviously impossible for an insured to comply with his statutory obligation if a common-law right to rescind *ab initio* were allowed to exist alongside the statutory provision for termination by notice. If a rescission were allowed to be effective retroactively as of the date of the issuance of the policy, it would be impossible for the

insured to do what the statute requires him to do, i.e., either procure new insurance or surrender his number plates, prior to the date upon which the termination of the coverage became effective. Furthermore, he would be retroactively rendered guilty of a misdemeanor for having operated from the date of the issuance of the policy to the date of the rescission, even though his conduct was lawful at the time that he engaged in it. Such a result could not have been intended by the Legislature.

      *      *      *      *      *      *

"The common-law right to rescind *ab initio* for fraud must ... yield to the superior force of the statute. Whether the action taken by the insurance company upon the discovery of the fraud is called a rescission or a cancellation, it cannot be effective to terminate the policy until a date specified in the notice not less than 10 days after its mailing."

*See also Aetna Casualty and Surety Company v. O'Connor,* 8 N.Y.2d 359, 364, 207 N.Y.S.2d 679, 682, 170 N.E.2d 681, 684 (1960) (stating that the statutory "right to cancel was designed as a substitute for, not an addition to, the common-law right of rescission" and that the statutory scheme "merely reflects the repeated legislative recognition that [automobile] liability insurance is not the concern solely of the insured and his insurer").[7]

The Supreme Court of Kansas, in *Continental Western Ins. Co. v. Clay,* 248 Kan. 889, 893, 811 P.2d 1202, 1205 (1991), quoting extensively from the earlier Kansas opinion in *Dunn v. Safeco Ins. Co. of America,* 14 Kan.App.2d 732, 736, 798 P.2d 955, 958 (1990), observed that compulsory automobile liability insurance enactments, with no fault provisions, have consistently been construed as

---

7. The New York cases have consistently reaffirmed the holdings in the *Teeter* and *O'Connor* cases. *See, e.g., Mooney v. Nationwide Mut. Ins. Co.,* 172 A.D.2d 144, 147, 577 N.Y.S.2d 506, 508 (1991); *Fireman's Fund Ins. Co. v. Corcoran,* 156 A.D.2d 167, 169, 548 N.Y.S.2d 211, 213 (1989); *Liberty Mut. Ins. Co. v. McClellan,* 127 A.D.2d 767, 769–770, 512 N.Y.S.2d 161, 163–164 (1987); *Allstate Insurance Co. v. Sullam,* 76 Misc.2d 87, 103, 349 N.Y.S.2d 550, 566 (1973).

" 'expressing a public policy that one who suffers loss due to an automobile accident shall have a source and a means of recovery, hence, the mandatory requirement of liability insurance.' "

The court then reviewed the law in this country regarding an insurer's claimed right to rescind *ab initio* such insurance policies (*ibid.*):

" 'In pursuance of that public policy, the courts that have considered the issue have universally held that in the case of an innocent third party who has suffered injury from the insured's operation of an automobile, there is no right of rescission *ab initio* even for the most blatant fraud. In some, but not all, of those cases, the rationale for the decision was a statutory enactment similar to [Kansas's compulsory insurance law]. Those courts have held that rescission has been abrogated and the only remedy for an insurance company is cancellation in strict accordance with the terms of the statute. *Teeter v. Allstate Insurance Company,* 9 App.Div.2d 176, 192 N.Y.S.2d 610 (1959), *aff'd* 9 N.Y.2d 655, 212 N.Y.S.2d 71, 173 N.E.2d 47 (1961).

" 'Regardless of the reasoning used, all courts that have considered the question as it pertains to an innocent third party have held that an insurer cannot, on the ground of fraud or misrepresentation, retrospectively avoid coverage under a compulsory insurance of financial responsibility law so as to escape liability to an innocent third party.' "

In *Sentry Indem. Co. v. Sharif,* 248 Ga. 395, 396–397, 282 S.E.2d 907, 908 (1981), the Supreme Court of Georgia, quoting earlier authorities, made the same point (emphasis in original):

" 'Since the purpose of compulsory insurance statute is to assure, so far as possible, that there will be no certificate of registration outstanding without concurrent and continuous liability insurance coverage, and since, once a certificate of insurance has been issued and filed [with the appropriate state agency], the contract of insurance *ceases to be a private contract between the parties and a supervening public interest then attaches and restricts the rights of the*

*parties in accordance with the statutory provisions,* it is impossible to reconcile the existence of a right to rescind the insurance contract ab initio for fraud with the general scheme of the compulsory insurance law. * * * Thus it has been universally held or recognized that an insurer cannot, on the ground of fraud or misrepresentations relating to the inception of the policy, retrospectively avoid coverage under a compulsory or financial responsibility insurance law so as to escape liability to a third party.' ... *E.g., Teeter v. Allstate Ins. Co.,* 9 A.D.2d 176, 192 N.Y.S.2d 610 (N.Y.S.C. 1959). Accord, Annot., 83 A.L.R.2d 1104 (1962)."

The Supreme Court of Arkansas, in *Ferrell v. Columbia Mut. Cas. Ins. Co.,* 306 Ark. 533, 538, 816 S.W.2d 593, 595–596 (1991), after agreeing with the reasoning of *Teeter v. Allstate Insurance Company, supra,* and other cases, pointed to an additional reason for precluding rescission *ab initio:*

"There are additional reasons for holding that prospective cancellation statutes abrogate retroactive rescission of a policy of liability insurance. If an insurer could unilaterally rescind coverage, unscrupulous insurers could hold the threat over the head of third party claimants in an attempt to bargain down their claims....

"Regardless of the reasoning used, all courts that have considered the question as it applies to an innocent third-party claimant have held that the insurer cannot, on the ground of fraud or misrepresentation, retroactively avoid coverage under a compulsory insurance or financial responsibility law."

*See, e.g., Barrera v. State Farm Mut. Auto. Ins. Co.,* 71 Cal.2d 659, 79 Cal.Rptr. 106, 114, 456 P.2d 674, 682 (1969) ("A rule which would permit an automobile liability insurer ... to retain its right to rescind the policy ... defeats ... the basic policy of the Financial Responsibility Law"); *Pearce v. Southern Guaranty Ins. Co.,* 246 Ga. 33, 39, 268 S.E.2d 623, 628 (1980) ("an automobile insurance policy providing basic third party liability insurance and basic personal injury protection benefits (no-fault) issued pursuant to Georgia law cannot be

voided retrospectively"); *American Underwrites Group v. Williamson*, 496 N.E.2d 807, 810–811 (Ind.App.1986) ("it appears to have been universally held that an insurer cannot on the ground of fraud or misrepresentation retrospectively avoid coverage under a compulsory or financial responsibility law so as to escape liability to a third party"); *Ohio Farmers Ins. v. Michigan Mut. Ins.*, 179 Mich.App. 355, 364–365, 445 N.W.2d 228, 232 (1989) ("we conclude that basic public policy considerations require that, once an innocent third party is injured in an accident in which coverage is in effect on the automobile, an insurer will be estopped from asserting rescission"); *American Mut. Ins. Co. v. Commercial U. Ins. Co.*, 116 N.H. 210, 357 A.2d 873, 875 (1976); *Atlantic Casualty Ins. Co. v. Bingham*, 10 N.J. 460, 465, 92 A.2d 1, 3 (1952); *Dobrolowski v. R.C. Chevrolet*, 227 N.J.Super. 412, 418, 547 A.2d 735, 737 (1988) (in "states with compulsory insurance statutes ... insurance companies cannot deny coverage to third persons, as well as the insured, because of a misrepresentation in the application for insurance"); *Fisher v. New Jersey Auto. Full Ins.*, 224 N.J.Super. 552, 557, 540 A.2d 1344, 1347 (1988) (insurer "cannot now avoid liability to plaintiff for PIP coverage by declaring the insurance policy null and void after the accident"); *Metro. Prop. & Liab. v. Insur. Com'r*, 517 Pa. 218, 229, 535 A.2d 588, 594 (1987) (rescission *ab initio* not permitted, as "the General Assembly intended that in order to terminate a policy of automobile insurance an insurer must comply with" the statutory cancellation procedures); *Rauch v. American Family Ins. Co.*, 115 Wis.2d 257, 264–265, 340 N.W.2d 478, 482 (1983) ("the purpose [of automobile insurance statutes] would be frustrated if innocent third parties were denied recovery because of misrepresentations made by the named insured on the application for insurance"). *See also, e.g., Shockley v. Sallows*, 615 F.2d 233, 237 (5th Cir.1980); *Farmers Insurance Exchange v. Rose*, 411 F.2d 270, 273 (9th Cir.1969); *Canavan v. Hanover Insurance Co.*, 356 Mass. 88, 91–92, 248 N.E.2d 271, 273 (1969); *Frankenmuth Mut. Ins. Co. v. Latham*, 103 Mich.App. 66, 302 N.W.2d 329 (1981); *Nimeth v. Felling*, 282 Minn. 460, 165 N.W.2d 237, 239 (1969); *Odum v. Nationwide*

*Mut. Ins. Co.,* 101 N.C.App. 627, 632–634, 401 S.E.2d 87, 91–92 (1991); *Richard v. Fliflet,* 370 N.W.2d 528, 534 (N.D.1985).[8]

The Maryland statutes providing for compulsory motor vehicle insurance and regulating the termination of motor vehicle insurance policies are similar to the statutes in other states. For this Court to construe them as allowing rescission *ab initio,* under the circumstances of this case, would both defeat the legislative policy underlying the statutory provisions and would place Maryland alone among the compulsory

---

8. Although the cases in jurisdictions with compulsory motor vehicle insurance uniformly hold that an insurer's common law right of rescission *ab initio* has been abrogated with respect to claims of innocent third parties, a conflict does exist with respect to claims by the insured who made the misrepresentation in the insurance application.

Some cases hold that the public policy underlying compulsory insurance laws, or that the presence of statutory cancellation procedures permitting only prospective cancellation, have abrogated the right of rescission *ab initio* even with regard to claims by the insured. *See, e.g., Dobrolowski v. R.C. Chevrolet,* 227 N.J.Super. 412, 547 A.2d 735, 737 (1988); *Teeter v. Allstate Insurance Company,* 9 A.D.2d 176, 192 N.Y.S.2d 610, 617–618 (1959), *aff'd,* 9 N.Y.2d 655, 212 N.Y.S.2d 71, 173 N.E.2d 47 (1961); *Mooney v. Nationwide Mut. Ins. Co., supra,* 172 A.D.2d 144, 577 N.Y.S.2d 506; *Odum v. Nationwide Mut. Ins. Co.,* 101 N.C.App. 627, 401 S.E.2d 87 (1991); *Metro Prop. & Liab. v. Insur. Com'r,* 517 Pa. 218, 535 A.2d 588 (1987). *See also Pearce v. Southern Guaranty Ins. Co.,* 246 Ga. 33, 268 S.E.2d 623 (1980). Other cases appear to distinguish between claims by the insured under mandated coverages such as PIP and claims by the insured under non-mandated coverages such as collision, indicating that a material misrepresentation by the insured in procuring the insurance will be a defense to the latter types of claims but not to the former. *See, e.g., Ferrell v. Columbia Mut. Cas. Ins. Co.,* 306 Ark. 533, 540, 816 S.W.2d 593, 596 (1991); *Dunn v. Safeco Ins. Co. of America,* 14 Kan.App.2d 732, 738–739, 798 P.2d 955, 959–960 (1990). Some cases, however, take the position that a material misrepresentation by the insured in procuring the automobile insurance is a defense to a claim by the insured regardless of the nature of that claim. *See, e.g., Cunningham v. Citizens Ins. Co. of America,* 133 Mich.App. 471, 350 N.W.2d 283 (1984); *United Sec. Ins. Co. v. Commissioner of Ins.,* 133 Mich.App. 38, 43–44, 348 N.W.2d 34, 36 (1984); *Rauch v. American Family Ins. Co.,* 115 Wis.2d 257, 268–269, 340 N.W.2d 478, 483–484 (1983).

As previously discussed, because the present case does not involve a claim by the insured, we have no occasion to decide this question.

motor vehicle insurance states.[9]

## C.

■ Atlantic Mutual argues that if the insurer is liable for Douglas Wines's claim, the liability should not extend beyond the $20,000/$40,000 mandatory minimum liability coverage prescribed by statute. According to Atlantic Mutual, Raymond Van Horn's policy limits of $100,000/$300,000 liability insurance should be inapplicable. Reliance is placed upon this Court's decision in *State Farm Mut. v. Nationwide Mut.*, 307 Md. 631, 516 A.2d 586 (1986).

In *State Farm Mut. v. Nationwide Mut.*, *supra*, this Court reaffirmed its earlier holding in *Jennings v. Government Employees Ins.*, *supra*, 302 Md. 352, 488 A.2d 166, that a "household exclusion" clause in an automobile liability insurance policy was contrary to the public policy embodied in Maryland's compulsory motor vehicle insurance law. We went on in *State Farm*, however, to hold that the household exclu-

---

9. Atlantic Mutual asserts that granting insurers the right of rescission *ab initio* would not result in uncompensated tort injuries because of uninsured motorist coverage and the availability of compensation from the former Unsatisfied Claim and Judgment Fund (UCJF) which was continued by Ch. 73 of the Acts of 1972 and is provided for in Art. 48A, §§ 243H–243L. Of course, the same argument can be made against compulsory liability insurance itself.

Moreover, the argument lacks merit. In many situations, including the present case, there is no uninsured motorist coverage. Bicyclists and pedestrians are not required to maintain uninsured motorist insurance. Furthermore, the UCJF was not designed for the situation where an insurance policy was issued but the insurer is attempting to invoke a contract right to defeat the claim. *See Forbes v. Harleysville Mutual*, 322 Md. 689, 710, 589 A.2d 944, 954 (1991); *Lee v. Wheeler*, 310 Md. 233, 238–243, 528 A.2d 912, 915–917 (1987); Art. 48A, § 243H.

Finally, the cases uniformly hold that the availability of alternate compensation, such as from uninsured motorist coverage or a fund like the UCJF, furnishes no reason for permitting rescission *ab initio*. *See, e.g., Continental Western Ins. Co. v. Clay*, 248 Kan. 889, 896, 811 P.2d 1202, 1207–1208 (1991); *American Mut. Ins. Co. v. Commercial U. Ins. Co.*, 116 N.H. 210, 357 A.2d 873, 876–877 (1976); *State Farm Mut. Auto. Ins. Co. v. Wall*, 87 N.J.Super. 543, 560–561, 210 A.2d 109, 118 (1965); *Teeter v. Allstate Insurance Company*, *supra*, 9 A.D.2d at 184–185, 192 N.Y.S.2d at 618–619.

sion clause was invalid only to the extent of the statutorily prescribed minimum liability coverage of $20,000/$40,000. We pointed out that it could "readily be inferred that the premium took account of the exclusion contained in the policy" (307 Md. at 638, 516 A.2d at 589), that the majority of compulsory insurance jurisdictions had invalidated household exclusion clauses only to the extent of the statutorily prescribed mandatory minimum liability coverage (307 Md. at 641–643, 516 A.2d at 591–592), and that "[a]s a general rule, parties are free to contract as they wish" (307 Md. at 643, 516 A.2d at 592).

The *State Farm* case is clearly distinguishable from the case at bar. In fact, the reasoning of our *State Farm* opinion requires a rejection of Atlantic Mutual's argument in this case.

█ Whereas in *State Farm* the parties agreed upon the household exclusion in their contract, in the present case the parties agreed upon $100,000/$300,000 liability coverage and *not* $20,000/$40,000 liability coverage. Atlantic Mutual received a premium based on $100,000/$300,000 liability coverage. In *State Farm* the insurer was being forced to provide a coverage which the contract had excluded and for which presumably no premium had been collected. At the time of the accident in the present case, however, the Van Horn policy was in effect, and contained the agreed-upon $100,000/$300,000 liability coverage for which the insurer had received a premium. Furthermore, the Maryland statutes regulating terminations, nonrenewals and reductions in coverage, Art. 48A, §§ 234A and 240AA, apply to the agreed-upon monetary coverage limits and not simply the statutorily prescribed minimums.

Finally, the cases in compulsory automobile insurance jurisdictions hold that the abrogation of the common law right of rescission extends to the agreed upon policy limits and that the insurer is liable up to the full amount of coverage. Thus, in *Georgia Farm Bureau Mut. Ins. Co. v. Phillips*, 251 Ga. 244, 304 S.E.2d 725, 726 (1983), the Supreme Court of Georgia pointed out that "because optional amounts of liability coverage are contemplated by our [statute] ..., we refuse to make

the distinction appellant urges between mandatory minimum and optional amounts of coverage." The Georgia Supreme Court also relied on the Georgia statute similar to Maryland's Art. 48A, § 240AA, stating that the statute regulating cancellations "does not distinguish between mandatory minimum and optional amounts of coverage, and the optional amount provided by Farm Bureau clearly falls within" the statute, 251 Ga. at 246, 304 S.E.2d at 727. *See also, e.g., Farmers Insurance Exchange v. Rose, supra,* 411 F.2d at 274–275; *Ohio Farmers Ins. v. Michigan Mut. Ins., supra,* 179 Mich.App. at 364–365, 445 N.W.2d at 231–232 (distinguishing between an invalid exclusionary clause in the policy and the abrogation of the right to rescind, and holding that the insurer's liability extends to the face amount of the policy); *Allstate Insurance Co. v. Sullam,* 76 Misc.2d 87, 104, 349 N.Y.S.2d 550, 567 (1973) (the accident victims "are third party beneficiaries of the liability policy contract between the insured and the insurer. Once added liability coverage is purchased and bound, the same policy prohibitions protect against rescission").

Consequently, the full amount of the liability coverage under the insurance policy issued by Atlantic Mutual to Raymond Van Horn is available for the claims based on the injury to Douglas Wines.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED, AND CASE REMANDED TO THE COURT OF SPECIAL APPEALS WITH DIRECTIONS TO VACATE THE DECLARATORY JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY AND TO REMAND THE CASE TO THE CIRCUIT COURT FOR BALTIMORE COUNTY FOR ENTRY OF A DECLARATORY JUDGMENT IN ACCORDANCE WITH THIS OPINION. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY THE RESPONDENT ATLANTIC MUTUAL INSURANCE COMPANY.*

Dissenting Opinion by McAULIFFE, J.

McAULIFFE, Judge, dissenting.

I do not agree that the legislature abrogated the common law right to rescind an insurance policy procured by fraud when it enacted compulsory insurance provisions.

## I.

Van Horn applied for automobile liability insurance with Atlantic in October, 1984. The written application he signed was marked "No" in response to the question "Has any driver above ... a physical impairment?" At the time, Van Horn was under the active care of a physician for epilepsy that had begun in 1982. The evidence demonstrated that in April and June of 1983, and in February of 1984, he had suffered grand mal seizures, during which he lost consciousness. In addition, Van Horn suffered light headedness, dizziness, and other symptoms associated with his condition that did not progress to unconsciousness. One year before he executed the application for insurance, Van Horn was hospitalized for a week with severe anemia, secondary to the medication he was taking for his epilepsy. At that time, his medication was changed to Klonopin, which he thereafter took four times each day. Van Horn testified that his first physician "may have said [the epilepsy] could affect my driving." His second physician, who assumed his care in 1984, advised Van Horn "shortly after he became my patient ... that he not drive until he was safe to do so per the Motor Vehicles...."

Van Horn did not tell the Motor Vehicle Administration of his epilepsy. When he renewed his Maryland operator's license in 1984, he answered "No" to the written question "Do you have any physical or mental disability, other than vision, which may affect your driving?"

The accident involving Van Horn and Wines occurred on 14 January 1987, at 11:52 p.m. Atlantic first learned of Van Horn's epilepsy when, in investigating the claim, it learned from the police accident report that "Mr. Van Horn ... advised he had taken (Klonopin) medication for his epilepsy at approx. 2200 hrs." After determining that Van Horn's epilep-

sy pre-existed his application for insurance, and after further determining that Van Horn had not disclosed his condition to the Motor Vehicle Administration, Atlantic sent Van Horn a check for all premiums he had paid, and filed this action for rescission of the policy. At trial, a representative of the Motor Vehicle Administration testified that if an applicant answers "Yes" to the question concerning the existence of a physical or mental disability, a medical authorization form is requested so that the Medical Advisory Board of the Motor Vehicle Administration may obtain information from the attending physician to be used in determining whether the license should be issued.

Ted Brockman, personal lines manager and former underwriting manager of Atlantic, testified that Atlantic writes only preferred risks in its automobile casualty line. He described Atlantic's underwriting procedures and criteria. He testified that Atlantic does not automatically refuse to write insurance for persons who have epilepsy. Rather, he said, the company's policy is to approve those persons who disclose physical impairments if they have been cleared to drive by the medical board of the appropriate licensing agency. If, Brockman said, that board had been notified of the impairment, and "if they had cleared the individual and indicated that they hadn't restricted his ability to drive because of a particular impairment," the disclosure of the physical impairment on the insurance application would not prevent the issuance of the policy.

The trial judge held that "Atlantic carries the burden of showing that the policy would not have been written if the fact of Van Horn's epileptic condition had been disclosed." Although acknowledging the testimony of Brockman concerning Atlantic's reliance upon determinations made by medical advisory boards, the trial judge held that Atlantic was required to show more than that Van Horn had not been cleared by the Medical Advisory Board of the Motor Vehicle Administration. Specifically, he ruled, Atlantic had the burden of showing that if Van Horn had disclosed his epilepsy to the Motor Vehicle Administration, the Medical Advisory Board would not have

cleared him, and thus the Motor Vehicle Administration would not have licensed him.

The Court of Special Appeals disagreed, holding in an unreported opinion that "a misrepresentation is material to the risk if it is of such a nature as would reasonably influence the insurer's decision as to whether it should insure the applicant." The intermediate appellate court concluded that Atlantic had met that standard by its uncontradicted evidence.

## II.

On the question of the appropriate burden of proof, it is clear that Atlantic, as the party seeking rescission, has the burden of proving, *inter alia,* the making of a material misrepresentation by Van Horn. *Stumpf v. State Farm Mut. Auto. Ins.,* 252 Md. 696, 705, 251 A.2d 362 (1969); *Erie Insurance v. Lane,* 246 Md. 55, 63, 227 A.2d 231 (1967). Van Horn contends the Court of Special Appeals erroneously placed upon him the burden of proving that the misrepresentation was material. It did not. The intermediate appellate court simply held that Atlantic had met its burden, and that in the absence of any other evidence which Van Horn might have offered to controvert Atlantic's evidence, the outcome was dictated by existing Maryland law.

In *Stumpf, supra,* 252 Md. at 711–12, 251 A.2d 362, quoting from *Silberstein v. Life Ins. Co.,* 189 Md. 182, 190, 55 A.2d 334 (1947), this Court said:

A false representation in an application for insurance is material to the risk if it is such as would reasonably influence the insurer's decision as to whether it should insure the applicant.

To the same effect, *see Nationwide v. McBriety,* 246 Md. 738, 744, 230 A.2d 81 (1967) ("The issue of materiality depends upon whether the misrepresentation of the true facts would reasonably have affected the determination of the acceptability of the risk."); and *Casualty Ins. Co. v. Schmidt,* 166 Md. 562, 568, 171 A. 725 (1934) (misrepresentations material "if they were such as would reasonably influence the decision on the

question whether this man should be insured against loss or disability from accident or ill health, which means, of course, if they were such as would reasonably form a material factor in estimating the chances of loss or outlay on the insurance").

What constitutes a material misrepresentation justifying rescission in life or health insurance policies or in annuity contracts is governed by statute. Article 48A, § 374 of the Md.Code (1957, 1991 Repl.Vol.) provides:

All statements and descriptions in any application for a life or health insurance policy or annuity contract, or for the reinstatement or renewal thereof, by or in behalf of the insured or annuitant, shall be deemed to be representations and not warranties. Misrepresentations, omissions, concealment of facts, and incorrect statements shall not prevent a recovery under such policy or contract unless either:

(1) Fraudulent; or

(2) Material either to the acceptance of the risk, or to the hazard assumed by the insurer; or

(3) The insurer in good faith would either not have issued, reinstated, or renewed the policy or contract in as large an amount, or at the same premium or rate, or would not have provided coverage with respect to the hazard resulting in the loss, if the true facts had been made known to the insurer as required either by the application for the policy or contract or otherwise.

The principles set forth in this statute, although not directly applicable to casualty insurance policies, are generally in accord with the contract law applicable to this case. The *Restatement (Second) of Contracts* § 162(2) (1974) provides that:

A misrepresentation is material if it would be likely to induce a reasonable person to manifest his assent, or if the maker knows that it would be likely to induce the recipient to do so.

Section 164(1) of the *Restatement* provides:

If a party's manifestation of assent is induced by either a fraudulent or a material misrepresentation by the other

party upon which the recipient is justified in relying, the contract is voidable by the recipient.

Section 167 addresses when a misrepresentation should be considered an inducing cause:

> A misrepresentation induces a party's manifestation of assent if it substantially contributes to his decision to manifest his assent.

Comment (a) to § 167 explains further:

> A misrepresentation is not a cause of a party's making a contract unless he relied on the misrepresentation in manifesting his assent. * * * It is not necessary that this reliance have been the sole or even the predominant factor in influencing his conduct. It is not even necessary that he would not have acted as he did had he not relied on the assertion. It is enough that the manifestation substantially contributed to his decision to make the contract.

Applying these principles to this case, it is apparent that Van Horn's misrepresentation was material. Brockman testified that if Van Horn had disclosed the epilepsy, Atlantic would have conducted a further investigation to determine whether the Medical Advisory Board of the Motor Vehicle Administration had approved Van Horn for a license. If it had, Atlantic (in the absence of any other disqualifying information) would have issued the policy without an increase in premium. Although Brockman did not explicitly state that the policy would not have been issued if the applicant did not meet Atlantic's underwriting standard, i.e., approval by the appropriate licensing authority after consideration of the disability, that conclusion was implicit in his testimony.

Petitioners did not suggest at trial that Atlantic's criterion was illegal or discriminatory. On its face, the standard appears to be fair and reasonable. If a government licensing authority, charged with the safety of the public and aided by its board of experts, clears the applicant as safe to drive, Atlantic considers the risk slight enough to justify the issuance of the policy. On the other hand, if the licensing authority concludes that the disability is likely to affect the

applicant's ability to drive to the extent that a license should not be issued, insurance is properly denied. Van Horn withheld pertinent information from the Motor Vehicle Administration, and thus by his own misconduct rendered himself incapable of meeting Atlantic's reasonable underwriting requirement. Van Horn's misrepresentation that he did not have a physical impairment was, under the circumstances of this case, "such as would reasonably influence the insurer's decision as to whether it should insure the applicant," *Stumpf, supra,* 252 Md. at 711–12, 251 A.2d 362, and was therefore a material misrepresentation.[1]

## III.

The majority holds that the compulsory motor vehicle insurance laws of this State have implicitly abrogated the common law right of an insurer to rescind a policy of automobile liability insurance procured by fraudulent or material misrepresentation, at least insofar as rescission might affect the rights of third parties who suffer damages as a result of an accident occurring before rescission. The theory is that the comprehensive insurance package enacted by the legislature was intended to provide, as far as practicable, a minimum level

---

1. I have not directly discussed the question of whether a plaintiff must demonstrate a causal connection between the misrepresentation and the loss in order to justify a rescission, because that question was neither presented to the trial court nor embraced within the petition for certiorari. I note in passing, however, that because the materiality of the misrepresentation is determined by reference to the time the contract of insurance is made, and relates to the effect on the insurer's decision to issue the contract, the overwhelming majority of courts have held that, in the absence of a contrary statute, there need be no causal connection between the misrepresentation and the loss. *See, e.g., Mutual Life Ins. Co. of N.Y. v. Morairty,* 178 F.2d 470, 475 (9th Cir.1949), *cert. denied,* 339 U.S. 937, 70 S.Ct. 673, 94 L.Ed. 1355 (1950); *Southern Farm Bur. Life Ins. Co. v. Cowger,* 295 Ark. 250, 748 S.W.2d 332, 336 (1988); *Campbell v. Prudential Ins. Co. of America,* 15 Ill.2d 308, 155 N.E.2d 9, 11 (1959); *Darnell v. Auto–Owners Ins. Co.,* 142 Mich.App. 1, 369 N.W.2d 243, 246 (1985); *Continental Assur. Co. v. Shaffer,* 157 F.Supp. 829, 834 (W.D.Mich.1957). *Compare Carroll v. Jackson Nat. Life Ins. Co.,* 304 S.C. 491, 405 S.E.2d 425, 427 (App. 1991).

of security for payment of damages caused by the negligent operation of motor vehicles, and that allowing a policy to be voided from its inception is necessarily inimicable to that objective.

In *Pennsylvania Nat'l Mut. v. Gartelman*, 288 Md. 151, 154, 416 A.2d 734 (1980), this Court said:

> In Maryland, there is an established legislative policy designed to make certain that those who own and operate motor vehicles in this State are financially responsible. . . . This legislative policy has the overall remedial purpose of protecting the public by assuring that operators and owners of motor vehicles are financially able to pay compensation for damages resulting from motor vehicle accidents. . . . To effectuate this legislative policy, the owner of a motor vehicle registered in Maryland is required to provide security, usually in the form of a vehicle liability insurance policy. (Citations omitted.)

Certainly, the 1972 legislation represents a comprehensive effort on the part of the legislature to have every motor vehicle required to be registered in this State insured (or otherwise financially secured) against loss whenever it is registered or operated. Just as surely, allowing rescission of a policy issued to satisfy compulsory requirements cuts against the desire to have all vehicles insured at all times. The question is, did the legislature intend to prevent rescission of all or part of the liability coverage of such policies, or did it intend to permit rescission but provide other remedies for third persons who otherwise would have benefited from the rescinded coverage? Strong arguments may be made for each alternative.

Prohibiting rescission guarantees coverage for the injured third party, at least to the extent of minimum coverage required by the statute.[2] To that extent, the result is "fair,"

---

2.  If rescission is to be prohibited on the theory that it is inconsistent with the general legislative scheme of mandated minimum liability coverage, it would seem logical, and consistent with our earlier holdings concerning prohibited exclusions, to prohibit rescission only to the

and in keeping with the intent of the legislature that all vehicles should be insured.

Prohibiting rescission is not fair, however, to the innocent insurer [3] who has been induced to enter into the contract of insurance by fraud or material misrepresentation of an insured. Traditional concepts of justice and fair play underlie the contract principles that have long permitted rescission under these circumstances. Although the legislature might well decide that abrogation of those established principles is required to effectuate a greater public good, I do not lightly assume or infer such an intent.

Of course, if rescission is prohibited the insurer is not entirely without a remedy. It may proceed against the insured for damages caused by the insured's deceit or negligent misrepresentation. Requiring that action does, however, place a significant burden upon an innocent party, and the prospects of collecting a judgment may be bleak.

On the other hand, if basic contract principles continue to apply, and rescission is permitted, the injured third party is not without a remedy. In addition to requiring uninsured motorist coverage, which will protect the third party if he is an insured under a policy of motor vehicle insurance, the legislature has provided a fund for the protection of qualified persons who suffer damages because of the negligence of an

---

extent of the minimum security required. *See State Farm Mut. v. Nationwide Mut.*, 307 Md. 631, 643–44, 516 A.2d 586 (1986). I therefore disagree with the majority on this issue as well.

3. An insurer will not be "innocent" if its reliance on the misrepresentation is not justified. Thus, where good faith or reasonable standards of fair dealing require a further investigation by the insurer that would lead to discovery of the misrepresentation, the reliance is not reasonable. *See Restatement (Second) of Contracts* § 172 (1974), providing that:

> A recipient's fault in not knowing or discovering the facts before making the contract does not make his reliance unjustified unless it amounts to a failure to act in good faith and in accordance with reasonable standards of fair dealing.

Van Horn does not suggest that Atlantic failed to act in good faith in accepting his representation.

uninsured motorist. The Maryland Automobile Insurance Fund, created by ch. 73 of the Acts of 1972 (replacing the Unsatisfied Claim and Judgment Fund) permits a person such as Wines to recover damages "caused by an uninsured operator or owner whose whereabouts are ascertainable for serving process" to the limits established by the financial responsibility laws. Maryland Code, Art. 48A § 243H(a)(3).

A number of State legislatures have decided that the common law right of an insurer to rescind a motor vehicle liability policy should be abrogated, and have specifically so provided. *See* Anno. *Rescission or avoidance, for fraud or misrepresentation, of compulsory, financial responsibility, or assigned risk automobile insurance.* 83 ALR.2d 1104, 1106 (1962).

A number of courts have held, either by reference to the particular language of compulsory vehicle insurance statutes or because of the public policy found to have been announced by their passage, that the common law right of rescission did not survive the passage of such statutes. *See, e.g., Sentry Indem. Co. v. Sharif,* 248 Ga. 395, 282 S.E.2d 907 (1981); *American Underwriters Group v. Williamson,* 496 N.E.2d 807, 811 (Ind.App.1986); *Teeter v. Allstate Ins. Co.,* 9 A.D.2d 176, 192 N.Y.S.2d 610, 619 (1959).

In this case, Wines points to two statutory provisions that were once in effect in this State, and which he believes addressed the question of rescission. Subsection (c)(6)(vi) of Section 7–324, Art. 66½, Md.Code, (1957, 1970 Repl.Vol.) (repealed) required that a policy of insurance, when offered as proof of financial responsibility, must provide:

> That the liability of the insurance carrier shall become absolute whenever loss or damage included in the policy occurs, and the satisfaction by the insured person of a final judgment for the loss or damage shall not be a condition precedent to the right or obligation of the carrier to make payment on account of the loss or damage. . . .

Subsection (f) of the same section provided:

> No policy of insurance offered as proof of financial responsibility under this subtitle shall be cancelled, or an-

nulled as respects any loss or damage, by any agreement between the person named in the policy and the insurance carrier after the insured person has become involved in an accident resulting in loss or damage and any cancellation or annulment shall be void.

This Court considered the first of these two subsections in *National Indemnity v. Simmons*, 230 Md. 234, 186 A.2d 595 (1962), and there held that "defenses based upon lack of notice or other cooperation by the insured are not available to the insurer." *Id.* at 243. The Court has not had occasion to consider the intended effect of this subsection on the right of rescission. Subsection (f) would appear by its terms to deal only with agreements made by the insurer and the insured after a loss. In any event, both of these subsections were expressly repealed by ch. 73 of the Acts of 1972, and were not re-enacted in any replacement legislation.[4]

The Attorney General of Maryland recently responded to an inquiry from the Insurance Commissioner concerning the right of an insurer to rescind an automobile liability insurance policy because of a material misrepresentation in the application for insurance. 71 Op. Att'y Gen. 173 (1986). He concluded that Maryland's compulsory insurance laws did not abrogate the common law right of rescission. After discussing the effects of §§ 234A and 240AA of Art. 48A Md.Code (1957, 1991 Repl.Vol.) (dealing with unfairness and discrimination in underwriting, and with procedures for cancellation and nonrenewal) he opined:

> It is doubtful that the General Assembly, by enacting §§ 234A and 240AA as well as a compulsory automobile insurance law, intended to deprive an insurer of the right to seek *judicial* rescission of an automobile liability insurance contract as an alternative to cancellation or nonrenewal. Absent a clear expression of legislative intent to the con-

---

4. Indeed, contrary to the suggestion of the majority that the legislature intended coverage in favor of third parties no matter how egregiously wrong the conduct of the insured, it is clear that lack of cooperation by the insured may defeat coverage where there is prejudice to the insurer. *See* Md.Code (1957, 1986 Repl.Vol.) Art. 48A § 482.

trary, we believe that the right to seek judicial rescission of an automobile liability insurance policy remains intact. (Emphasis in original; footnote omitted.)

71 Op. Att'y Gen. at 179.

Although a strong case may be made in favor of a policy prohibiting rescission of motor vehicle liability policies, equally strong arguments exist in preserving the common law right of rescission. In the absence of any express resolution of the question by the legislature, I would not presume an intent to abrogate the common law, nor read into the statute language expressly repealed. I would affirm the judgment of the Court of Special Appeals.