814 A.2d 52

**MARYLAND AUTOMOBILE INSURANCE FUND**

v.

**LUMBERMEN'S MUTUAL CASUALTY COMPANY, et al.**

No. 2149, Sept. Term, 2001.

Court of Special Appeals of Maryland.

Dec. 24, 2002.

George C. Davis (Hardwick & Harris, LLP on the brief), Baltimore, for appellant.

Kevin A. Clasing (Law Office of Nancy L. Harrison on the brief), Annapolis, for appellees.

Argued Before JAMES R. EYLER, ADKINS and MARVIN H. SMITH (Retired, Specially Assigned), JJ.

ADKINS, Judge.

In Queens, New York, in August 1998, a 1993 Lexus owned by Natecha Tyme, and operated at the time by Devon Guthrie, collided with a vehicle driven by Kenneth McBride. At the time of the accident, McBride's vehicle was insured by Lum-

bermen's Mutual Casualty Co. ("Lumbermen's"), appellee. Tyme's vehicle, on the other hand, was insured by the Maryland Automobile Liability Insurance Fund ("MAIF"), appellant. After the accident, McBride submitted a claim to MAIF for losses sustained during the accident.

Through an investigation commencing before the accident, and extending thereafter, substantial questions were raised about Tyme's status as a Maryland resident. Accordingly, MAIF issued a letter on January 5, 1999, notifying Tyme that her policy "ha[d] been voided back to the inception date," pursuant to Md.Code (1997, 2002 Repl.Vol.), section 20–502(e) of the Insurance Article ("IN").

Because of the voiding of the policy, McBride was unable to recover from MAIF, so he sought compensation from Lumbermen's under his uninsured motorist coverage with that company. Thereafter, Lumbermen's filed a complaint in the Circuit Court for Anne Arundel County, asking the court to "enter a declaratory judgment finding a valid policy of insurance with MAIF insuring the Tyme vehicle." MAIF appeals from entry of such a declaratory judgment in favor of Lumbermen's, raising the following issue:

Can a MAIF policy be voided *ab initio* more than 60 days after its issuance, when the applicant intentionally misrepresented her residence status in order to meet the statutory eligibility requirements set forth in IN section 20–502?

We answer this question in the affirmative, and hold that the legislature has declared any policy obtained through intentional misrepresentation void *ab initio*, regardless of when the misrepresentation is discovered by MAIF. Therefore, we reverse the judgment of the circuit court.

## FACTS AND LEGAL PROCEEDINGS

Tyme first secured insurance with MAIF on November 6, 1996. On her application, Tyme listed her address as "8001 Crabtree Place, Gaithersburg, MD." She also listed home and work telephone numbers with Maryland area codes. Tyme further represented that she was a "home attendant" at

"Potomac Home Care." At the bottom of the application, Tyme certified in the "applicant eligibility statement" that she was a Maryland resident or was "otherwise eligible" for insurance with MAIF. The vehicle insured under the 1996 policy was a 1994 Toyota 4 Runner.

The 1996 policy was subsequently terminated in 1997 for alleged non-payment of premiums. Soon thereafter, Tyme filled out another application for insurance with MAIF, and a second policy was bound on August 26, 1997. Tyme repeated the information given on her 1996 application. The 1997 policy also insured the 1994 Toyota 4 Runner. A second vehicle, the 1993 Lexus involved in the accident that lies at the heart of this case, was added to the 1997 policy on May 27, 1998. Both the 1996 and 1997 policies were bound by Charles L. Baum, a MAIF producer.

In its answer to Lumbermen's complaint seeking a declaratory judgment as to the validity of Tyme's MAIF policy, MAIF asserted that "the policy issued to Natecha Tyme was voided ab initio." Both parties moved for summary judgment.[1] After the September 25 hearing on the motions, the circuit court granted Lumbermen's motion, concluding that the voiding of Tyme's policy had been "ineffective insofar as liability claims asserted against Tyme by third parties are concerned," and that MAIF "d[id] have liability insurance coverage for the vehicle owned by Natecha Tyme ... for the motor vehicle accident" at issue.[2] MAIF appealed.

## DISCUSSION

In 1972, the legislature passed amendments to the motor vehicle law, for the first time mandating motor vehicle insur-

---

1. In arguing their respective motions for summary judgment, the parties assumed arguendo that, to obtain a MAIF policy, Tyme misrepresented her state of residence, as well as other information material to her eligibility. We too will so assume in reviewing the circuit court's decision to grant summary judgment in favor of Lumbermen's.

2. The specific reasons given by the court for its decision will be discussed later in this opinion.

ance.[3]  *See Van Horn v. Atlantic Mut. Ins. Co.,* 334 Md. 669, 680, 641 A.2d 195 (1994). "The provisions for compulsory insurance on every Maryland automobile were made feasible by the creation of MAIF as an insurer of last resort." *Id.* at 684, 641 A.2d 195; *see also Nat'l Grange Mut. Ins. Co. v. Pinkney,* 284 Md. 694, 703–4, 399 A.2d 877 (1979)(purpose of MAIF is to provide automobile insurance coverage to individuals who may not otherwise be able to obtain insurance). This case concerns whether a MAIF policy is rendered void *ab initio* if, at any time after policy issuance, MAIF discovers that the policy was obtained through intentional misrepresentation by the policyholder in his or her policy application.

In 1994, the Court of Appeals answered this question as it pertained to private insurers and their policies. Before the adoption of the 1972 amendments, insurers enjoyed a common law right to void *ab initio* a motor vehicle insurance policy for fraud in the application—*i.e.,* when the applicant had made a material misrepresentation in the policy application. *See Van Horn,* 334 Md. at 679, 641 A.2d 195. In deciding whether this common law right had been abrogated by the 1972 amendments, the Court considered the main public policy objective of the amendments. According to the Court, "[t]hat objective was to ensure, as far as practicable, that there would be continuous insurance policy coverage, or approved self-insurance, applicable to injuries incurred in automobile accidents." *Id.* at 680, 641 A.2d 195 (citing *Pennsylvania Nat'l Mut. Cas. Ins. Co. v. Gartelman,* 288 Md. 151, 154, 416 A.2d 734 (1980)). It noted that, while the 1972 amendments added statutory provisions instituting mandatory motor vehicle insurance, and creating MAIF to carry out that mandate, it also repealed the former Maryland Automobile Insurance Plan for Assigned Risks ("the Plan"). This assigned risk plan was designed to aid drivers in obtaining policies from private insurers in pre-MAIF times. *See id.* at 683, 641 A.2d 195. One of the provisions of the Plan stated that an otherwise eligible appli-

---

**3.** The amendments became effective on January 1, 1973. *See Van Horn v. Atlantic Mut. Ins. Co.,* 334 Md. 669, 680, 641 A.2d 195 (1994).

cant could not be refused coverage, or have his or her coverage cancelled for underwriting reasons, unless the applicant had made a "material misrepresentation in procuring the insurance," in which case the insurer could void the policy from the date of its inception. In other words, the former statute expressly recognized an insurer's common law right to void *ab initio* a policy for fraud. The Court found significant the fact that the legislature did not include a comparable provision preserving this right of rescission in its 1972 amendments. *See id.* at 684, 641 A.2d 195.

In holding that a private insurer's common law right to void *ab initio* a fraudulent policy indeed was abrogated by the adoption of the 1972 amendments, the Court of Appeals forcefully stated that "[r]ecognition of a common law contract right to void a motor vehicle insurance policy *ab initio* is utterly inconsistent with" the legislative purpose of the compulsory insurance provisions of the amended statute. *See id.* It also found the recognition of such a right of retroactive termination inconsistent with the amended statute's policy termination procedures, "which permit only prospective cancellation, require that the insurance policy stay in force if the cancellation is protested, and contemplate the availability of an insurance policy from MAIF if the cancellation goes into effect, thereby guaranteeing continuous motor vehicle insurance coverage." *Id.* at 685, 641 A.2d 195. The Court noted that its conclusion was consistent with that of other compulsory motor vehicle insurance jurisdictions that had addressed the issue. *See id.* at 687, 641 A.2d 195. The Court of Appeals' decision relied heavily on the existence of MAIF as an insurer of last resort, an entity that was "waiting in the wings" to insure an individual should his or her private insurance be terminated.[4]

---

4. It is important to note that the Court of Appeals only reached the abrogation question as it pertained to third party claims, and expressly reserved decision of whether an insurer could void a policy in the face of a first-party claim by the policyholder. *See Van Horn,* 334 Md. at 693 n. 8, 641 A.2d 195.

Although the Court of Appeals' decision in *Van Horn* answered the question at issue in this case as to private insurers and their policies, no court yet has addressed whether MAIF policies are void *ab initio* because of a misrepresentation in the policy application. Thus, we tread in new territory in resolving this appeal.

MAIF asserts that the circuit court erred in concluding that the policy remained effective as it pertained to third party claims. Lumbermen's argues that the court acted properly in imposing liability. Before we outline the parties' arguments in any more detail, we shall set forth the background material relevant to our analysis.

## I.

### Relevant Authorities
#### A.

#### 1973 Attorney General's Opinion

The first relevant authority interpreting the statute at issue was a 1973 opinion of the Maryland Attorney General ("1973 Opinion"). *See* 58 Md. Op. Att'y Gen. 427 (1973). At the time of the 1973 Opinion, the MAIF statute featured the following cancellation provision, which is retained in the current statute as IN section 20–509(e):

(e) *Cancellation of coverage—Grounds.*—(1) On review of an application, the Fund may cancel coverage and refuse to issue a policy if the Fund finds that:

(i) the applicant is not qualified for insurance issued by the Fund; [5]

---

**5.** Maryland Code (1997, 2002 Repl.Vol.), section 20–502(b) of the Insurance Article ("IN"), which sets forth the eligibility requirements for issuance of a MAIF policy, provides that, to qualify for a MAIF policy, an individual must

(1) be domiciled in [Maryland];

(2) own, lease, or rent a primary place of residence in [Maryland] and, regardless of the person's domicile, reside in [Maryland] for more than 1 year;

(ii) the applicant has not paid the appropriate premium; or

(iii) the Fund is authorized to reject the application under § 20–516 of this subtitle.

(2) Cancellation of coverage may occur not later than 60 days after coverage is effective.

In the 1973 Opinion, the Attorney General opined that, despite the statute's 60–day "cancellation" provision, "where an insured has intentionally misrepresented his eligibility to the agent or broker, or the insured has colluded with the agent or broker in fraudulent misrepresentation of eligibility then the coverage is voidable (*ab initio*) at the option of MAIF, and any claims arising under the policy may be disclaimed." *See id.* at 430. It is important to recognize, however, that the 1973 Opinion preceded the Court of Appeals' decision in *Van Horn* by roughly two decades.

## B.

### 1983 Amendments: Addition of "Void *Ab Initio*" Provision

In 1983, the statute was amended in response to the recommendations of a special legislative task force, the Insurance Task Force of the House Economic Affairs Committee ("Task Force"). The 1983 amendments included the addition of section 20–502(e)(1), which expressly granted MAIF the ability to "void *ab initio*" a policy under certain circumstances.

The changes to the MAIF statute derived from the Task Force's observation that many individuals would obtain insurance at the time that their vehicle tags were renewed, but cancel the policy shortly thereafter. The bill made it less attractive for an insured to cancel a MAIF policy by providing that a producer's commission would be "fully

---

(3) maintain a main or branch office or warehouse facility in [Maryland], and base and operate motor vehicles intrastate in [Maryland];
(4) have filed as a [Maryland] resident for income tax purposes; or
(5) have a nonresident permit issued under § 13–402.1(e) of the Transportation Article.

earned" when "a valid contract of insurance" was made with the Fund and the premium was paid. This meant that the producer's commission would be deducted from any amount refunded if a MAIF policy was cancelled, presumably reducing the incentive for an individual to drop insurance coverage. (Prior to this amendment, an insured who canceled a MAIF policy would receive a refund including part of the producer's commission). However, under the amendment the producer would not earn a commission if the applicant did not pay the premium or was ineligible for a MAIF policy—in which cases the legislation termed the policy "void *ab initio.*" This presumably reduced any incentive for a producer to obtain commissions by ignoring eligibility requirements when placing policies. The Legislature believed that it was subjecting MAIF policyholders to the same conditions as policyholders of private insurers.

85 Md. Op. Att'y Gen. No. 00–012, 2000 Md. AG LEXIS 13, *37–38 (filed May 24, 2000) (citations and footnotes omitted).

The words *"ab initio"* were subsequently deleted from the provision in 1996. *See* 1996 Md. Laws Ch. 11. This deletion, however, was not intended to result in any substantive alteration of the statute. The Revisor's Note to section 20–502 in the 1997 Repl.Vol. of the Insurance Article explains the reason for this removal:

> In subsection (e) of this section, the former reference to void "ab initio" . . . is deleted as unnecessary. The term "void" is commonly used by itself to describe an agreement that is void from the beginning or absolutely void. This is in contrast to the term "voidable," which is used to describe an agreement that may be declared void at the election of a party.

Thus, the current version of section 20–502, outlining the eligibility requirements for policyholders, provides that, "[i]f a prospective insured fails to qualify under this section, **any policy issued is void** and a commission may not be paid by the Fund to a producer." IN § 20–502(c)(emphasis added).

The 60–day "cancellation" provision in section 20–509, however, remained in the statute.

## C.

### MAIF's Administrative Regulations

MAIF has also adopted administrative regulations under the above mentioned statutes. Though section 20–502(e) provides that a MAIF policy "is void" "[i]f a prospective insured fails to qualify," in its administrative regulations, MAIF has considerably narrowed the scope of this generalized statement. Under MAIF's regulations, "[i]f MAIF subsequently determines that an applicant has made **material misrepresentations as to the applicant's eligibility before coverage was bound** ... [a]ny policy or endorsement issued in reliance on the incorrect eligibility information is void[ .]" COMAR 14.07.02.02.C(2)(emphasis added).

## D.

### Recent Attempts To Harmonize The "Void" And "Cancellation" Provisions Of The Statute

Some confusion arises when section 20–502(e)(1) is read in conjunction with section 20–509, proscribing the "[a]uthority of producers to bind coverage." Since the 1983 addition of section 20–502(e), several authorities familiar with Maryland motor vehicle insurance law have attempted to clear up the confusion. These attempts have led to conflicting interpretations. The parties cite two authorities in particular, whose interpretations we outline below.

### 1.

### 1999: Janquitto's *Maryland Motor Vehicle Insurance* Treatise

Lumbermen's urges us to consult the most recent edition of *Maryland Motor Vehicle Insurance* (2d ed.1999), a treatise written by Andrew Janquitto. According to Janquitto,

notwithstanding the Attorney General's position in 1973, today's statutory scheme gives [MAIF] the right to rescind regardless of whether the representation as to eligibility was fraudulently or innocently made. The sixty-day period, however, still guides. At common law, a party to a contract had to rescind within a reasonable time after discovering the misrepresentation. The sixty-day period in Section 20–509 ... is the legislature's way of determining a reasonable time.

*Janquitto, supra,* § 20.5(C) at 840.

In a preceding section entitled "Rescission of MAIF policies," Janquitto opines:

Section 20–509(e) sets forth MAIF's right to "cancel" a policy within 60 days of the application under certain circumstances. When § 20–509(e) is read in connection with § 20–502(e), the former makes more sense if the right of termination is rescission, not cancellation. It is also unclear whether the decision in [*Van Horn* ] affects MAIF's ability to rescind under § 20–509(e) after an accident. Presumably it does.

Janquitto, *supra,* § 18.10 at 814 n. 111. We will address the validity of Janquitto's interpretation later in this opinion.

### 2.

### 2000: Maryland Attorney General's Opinion

■ MAIF points principally to a recent Opinion of the Attorney General, which supports its position ("2000 Opinion").[6] *See* 2000 Md. AG LEXIS 13. That opinion answered a question posed by Maryland's Insurance Commissioner regarding his authority to regulate MAIF under the Unfair Claims Settlement Practices Act. While its overall purpose

---

**6.** Opinions of the Attorney General are advisory only, and this Court is not bound by the positions taken in those opinions. *See, e.g., Prince George's County v. Aluisi,* 354 Md. 422, 438–39, 731 A.2d 888 (1999)(rejecting as "erroneous" an interpretation given in Attorney General's opinion); *Dedo v. State,* 343 Md. 2, 14, 680 A.2d 464 (1996)(finding "persuasive" an interpretation given in Attorney General's opinion).

was not directly to answer the question at hand, the 2000 Opinion featured an in-depth discussion and interpretation of the interplay between sections 20–502(e) and 20–509(e) of the Insurance Article.

In answering the question of whether the Commissioner has "authority to reverse or modify a MAIF decision to void a policy *ab initio*," the Attorney General's Opinion "review[ed] the source of MAIF's authority to cancel a policy retroactively." *Id.* at *30–31. It acknowledged that, although MAIF's authority to rescind is derived from IN section 20–502(e), "[t]hat section establishes no time limit, conditions, or procedures for determining whether a policy is 'void.' Nor, on its face, does it require or authorize any action by MAIF to render a policy void." *Id.* at *31.

The Attorney General also discussed, in detail, the substance of the Task Force Report leading to the 1983 amendments to the MAIF statute. *See infra*, Part I.B. Later, the 2000 Opinion addressed the interplay between section 20–509 and section 20–502, in an attempt to "harmonize" the two provisions. According to the Attorney General,

[i]n creating the 60–day deadline in IN § 20–509(e)(2) for MAIF to cancel a policy bound by a producer, the Legislature clearly contemplated that some ineligible persons would retain MAIF insurance despite a lack of qualification, if their lack of qualification was not discovered within the 60–day review period. Presumably, the Legislature accepted that as the price for certainty in the binding of MAIF coverage. **However, we think it unlikely that, in providing a limited period for MAIF to review the eligibility of an applicant, the Legislature intended to benefit an applicant who deliberately attempted to thwart that review.** Indeed, the mandate in IN § 20–502(e) that ineligible persons be referred to the Insurance Fraud Division for investigation and prosecution suggests that the Legislature anticipated that the voiding of policies would be related to deliberate misrepresentation.

Thus, in our opinion, MAIF's authority to rescind a policy because the applicant is not eligible for coverage by the Fund is ordinarily limited to the 60–day review period after coverage is initially bound. However, MAIF still has authority to void a policy retroactively without regard to the 60–day period if the insured has intentionally misrepresented eligibility for MAIF coverage and thus defeated MAIF's ability to make an expeditious determination about eligibility.

*Id.* at *43–44 (emphasis added).[7]

The Attorney General outlined two ways in which the voiding of a MAIF policy is distinguishable from the voiding of a private insurance policy. First, the Attorney General reasoned, unlike the eligibility criteria used by private insurers, "MAIF's eligibility criteria do not address the degree of risk MAIF is willing to accept." *Id.* at *52–53. Second, the rationale employed by the Court of Appeals in *Van Horn* did "not apply as readily" to MAIF, as an insurer of last resort. *See id.* at *53. In resolving the issue, the Attorney General ultimately proclaimed, "Until the Court of Appeals speaks definitively on this issue, we believe that MAIF's right to rescind policies on the basis of deliberate misrepresentation as to eligibility survives *Van Horn.*" *Id.* at *55.

## II.

### The Circuit Court's Reasoning

In granting summary judgment in favor of Lumbermen's, the circuit court reasoned:

Under *Van Horn,* the Court of Appeals clearly indicated that the burden must fall on the original insurer as between innocent third parties. Section 20–509 provides a grace period for MAIF to void a policy ab initio. We can certainly sympathize with MAIF which no more knew of the problem within 60 days than it did originally. However, MAIF is a

---

7. Janquitto did not have the benefit of this opinion when he drafted his 1999 opinion on the subject.

creation of statute and the statute limits its power to rescind, which in any event exceeds that of a private carrier.

One problem is the use of the word "void" in section 20–502(e). We do not find this dispositive for two reasons: 1) The section refers to commissions which are not at issue here and, 2) the words "void" and "voidable" are frequently interchangeable.

We therefore believe MAIF must cover the injury whether or not Ms. Tyme is a Maryland resident.[8]

We do not find the circuit court's rationale for disregarding the "void" language of section 20–502(e) persuasive. The circuit court's rejection of the "void" language due to its alleged ambiguous meaning is inconsistent with the 1997 Revisor's Note, which clearly explains that the word "void" as it appears in section 20–502(e) means "void *ab initio.*" Furthermore, the fact that the "void" language appears in a section concerning producer commissions is not a reason to disregard the express language of the statute. We must presume that the legislature would not have included the word "void" in this section if it did not intend for it to have its usual meaning.

### III.

### The Parties' Arguments

Relying on the 2000 Attorney General's Opinion, MAIF argues that the legislature did not intend for it to insure vehicles in other jurisdictions. It asserts that,

---

**8.** Accordingly, in its November 16, 2001 order, the court found:
   1. For the reasons set forth in the Court's opinion of October 2, 2001, [MAIF's] rescission of its insurance policy issued to Natecha Tyme is ineffective insofar as liability claims asserted against Tyme by third parties are concerned;
   2. [MAIF] does have liability insurance coverage for the vehicle owned by Natecha Tyme and operated by Devin Guthrie for the motor vehicle accident which occurred on or about August 20, 1998 in Queens, New York.
   3. Natecha Tyme intentionally misrepresented her residency status at the time she procured the automobile insurance policy from [MAIF] through producer Charles T. Baum.

[u]nlike private insurers, MAIF has no authority to refuse coverage for eligible applicants who meet the statutory requirements. Moreover, as the plain wording of Section 20–502 indicates, MAIF is expressly prohibited from issuing policies to those who do not qualify. From the stand point of statutory interpretation and public policy, it should be clear that the legislature did not intend to require MAIF to provide insurance coverage for accidents which have little or no connection with Maryland simply because the applicant was successful in defrauding MAIF for 61 days or longer.

MAIF also argues that any ambiguity in the statute "is surely resolved by reference to the manner in which MAIF is funded." Because Maryland policyholders essentially pay the operating costs of MAIF, it argues, "it cannot be claimed that the legislature intended to impose the financial burden of insuring New York drivers upon Maryland policy holders."

MAIF also contends that, "as a matter of statutory construction the lower court … misread [s]ection 20–509(e)." According to MAIF, the introductory clause in that section, "on review of an application," limits it to situations "where the information contained in the [insurance policy] application is accurate." It is section 20–509(e)(2) that provides that cancellation under this section must occur within 60 days after coverage is effective.

MAIF points to the 1997 Revisor's Note to section 20–509, which states:

In subsection (e)(1) of this section, [MAIF] **is given authority to "cancel** coverage and refuse to issue a policy" under certain circumstances, i.e., an applicant is not qualified or premium is not paid. In practice, if coverage is canceled the producer still is entitled to a commission. It is to be noted under §§ 20–502(e) and 20–507(f) of this subtitle, if those same circumstances occur, the policy **is to be declared void** and no commission may be paid to the producer. (Emphasis added.)

Lumbermen's, on the other hand, asserts that while the legislature **did** grant MAIF a limited right to void *ab initio* its

policies, distinguishing it from private insurers, this right may only be exercised within 60 days of the date coverage is bound, consistent with section 20–509(e). In urging us to adopt the position promoted by Janquitto in the excerpt discussed above, Lumbermen's asserts that,

> although MAIF, because of the statute, may have authority different from that of private insurance companies, it is also bound by the same statute when it imposes different requirements. [Section] 20–509(e)(2) states that when cancellation can occur, it must be within 60 days after coverage is effective.

In responding to MAIF"s argument that the legislature could not have intended the 60 day period to apply to MAIF"s right to void *ab initio* a policy because it would be an unreasonable administrative burden to expect MAIF to investigate for misrepresentations each of the "at least tens of thousands" of applications it receives each year, Lumbermen's argues that this "is a matter to take before the legislature rather than ask for relief from the courts in the face of the statute." It also asserts that MAIF has the opportunity to examine more carefully the documents presented to a producer before coverage is bound, or soon after, and could require more detailed documentation to establish eligibility, such as proof of state residency. Further, Lumbermen's argues, "MAIF is not left without remedy" if this Court determines that the legislature intended to grant MAIF the right to void *ab initio* a policy only within 60 days after coverage is bound, regardless of whether the misrepresentation was innocent or intentional, because it could "pursue a tort claim of the correct sort against the alleged wrongdoer."

## IV.

### A MAIF Policy Is Void *Ab Initio* If, At Any Time, MAIF Determines That The Policyholder Intentionally Misrepresented Information Material To Eligibility

We agree with MAIF that the circuit court erred in concluding that the policy was still in effect even if MAIF

determined more than 60 days after the policy was bound that Tyme had intentionally misrepresented information material to her eligibility for the MAIF policy.

The reasoning employed by the Court of Appeals in *Van Horn* is not inconsistent with our decision, given the differences between MAIF and private insurers.[9] In concluding that private insurers' right of rescission had been abrogated by the 1972 overhaul of the motor vehicle insurance law, the Court focused on two relevant considerations. The Court first relied on the fact that, in revising the statute, the legislature deleted a previous provision that had expressly recognized and preserved a private insurer's common law right to void *ab initio* a policy for fraud.

This case presents an entirely different situation. Unlike its treatment of private insurers, the legislature expressly determined that MAIF policies procured by intentional misrepresentation are void, regardless of when the misrepresentation is discovered, by adding section 20–502(e) in its 1983 amendment to the statute. Although, as evidenced by the Task Force Report, the "void" *ab initio* language was added to the statute in the context of producer commissions, it seems clear to us that the legislature would not have included the word "void" in this section if it did not intend for it to have its usual meaning. Thus, as mentioned earlier, we find the trial court's disregard of the "void" language on this basis erroneous. To the contrary, the plain language of section 20–502(e) is indicative of a legislative intent to declare policies procured through intentional misrepresentation void.

Although the parties and the authorities they cite frame the issue as concerning the scope of MAIF's "right" to void *ab initio* a policy, this is an improper characterization of the statute. *See, e.g.,* 2000 Md. AG LEXIS at *43–44, *55 (characterizing section 20–502(e) as granting MAIF a "right to rescind" or "authority to void" a policy); Janquitto, *supra,*

---

9. Lumbermen's, with admirable candor, conceded this point during oral argument.

§ 20.5(C) at 840 (characterizing same as giving MAIF a limited "right to rescind"). A "right" is something that a party can **choose** whether to exercise. It is "[a] power, privilege, or immunity secured to a person [or entity] by law." BLACK'S LAW DICTIONARY 1322 (1999). We hold that section 20–502 does not give MAIF a **right** to void its policies, in this sense of the word. Rather, section 20–502 is a legislative **declaration** that any MAIF policy determined by MAIF to have been obtained through intentional misrepresentation "is void." In effect, MAIF's only role is in making the prerequisite finding of intentional misrepresentation.

The interpretation of section 20–502 as rendering such policies void *ab initio*, separate and apart from MAIF's right to cancel a policy, is supported by the 1997 Revisor's Note to section 20–509. This Revisor's Note explains that, if the same circumstances that trigger cancellation of the policy under section 20–509(e) occur under section 20–502(e), "the policy is to be declared void and no commission may be paid to the producer." This Revisor's Note strongly suggests that the legislature saw the two provisions as separate and distinct.[10] Thus, the circuit court's interpretation of **section 20–509(e)** to "provide a [60–day] grace period for MAIF to void a policy ab initio" is incorrect. We agree with MAIF that section 20–502, rather than section 20–509, governs intentional misrepresentations.

It is significant that the legislature placed no time limitation on declaring policies obtained through intentional misrepresentation void *ab initio* under section 20–502(e), while it placed a firm 60–day limit on MAIF's cancellation right under section 20–509(e). As an initial matter, we find unpersuasive Lumbermen's argument that the 60–day time limit for

---

10. The 1997 Revisor's Note to section 20–509 also supports our holding that section 20–502 does not give MAIF any **choice** as to whether to void *ab initio* policies obtained through intentional misrepresentation, but instead simply declares such policies void as a matter of law. It refers to section 20–509 as granting MAIF "authority" to cancel a policy, while it refers to section 20–502 as "declar[ing]" a policy void.

cancellation under section 20–509 extends to section 20–502. This is because we see no evidence that the legislature intended such a result.

We agree with MAIF and the 2000 Attorney General's Opinion that section 20–502 is more accurately interpreted to declare void *ab initio* a policy whenever MAIF discovers that a policyholder has intentionally misrepresented information material to his or her eligibility for a MAIF policy. The absence of any time limitation, express or implied, supports this result. Furthermore, MAIF's longstanding administrative regulations are consistent with this plain language interpretation. *See Baltimore Bldg. & Constr. Trades Council v. Barnes*, 290 Md. 9, 14–15, 427 A.2d 979 (1981)("in the matter of statutory construction it is well understood that the view taken of a statute by administrative officials soon after its passage is strong, persuasive influence in determining the judicial construction"); *but see Maryland State Police v. Warwick Supply & Equip. Co.*, 330 Md. 474, 481, 624 A.2d 1238 (1993)("It is axiomatic . . . that an administrative regulation must be consistent with the letter and policy of the statute under which the administrative agency acts"). As stated earlier, COMAR 14.07.02.02.C(2), first adopted in 1988, provides that if, after a policy is bound, "MAIF subsequently determines that an applicant has made material misrepresentations as to the applicant's eligibility before coverage was bound," then such policy "is void."

Furthermore, we must interpret a statute in a way that is reasonable. *See State v. Brantner*, 360 Md. 314, 321, 758 A.2d 84 (2000)("[statutory] construction requires that the statute be given a reasonable interpretation, not one that is illogical or incompatible with common sense"). We agree with MAIF that, as a matter of common sense, the legislature could not have expected MAIF to discover a material misrepresentation within 60 days if the policy applicant was intentionally and deliberately attempting to deceive MAIF. MAIF has to be able to rely on the representations of its thousands of policy applicants as true, until it discovers otherwise. It is not reasonable to expect that MAIF will possess the time or

resources to check each representation on each application for accuracy. When an applicant is found to have intentionally deceived MAIF, the burden and responsibility must rest on that individual, not on MAIF, the entity that relied to its detriment on the truth of the applicant's representation. This is merely common sense. We stress, however, that our decision rests on the plain language of the statute, rather than merely on the relative weight of the administrative burden that various constructions of the statute would place on MAIF.

The second consideration relied on by the *Van Horn* Court in holding that private insurers' right to void *ab initio* their policies for fraud had been abrogated was the fact that recognition of such a right would be inconsistent with the legislative purpose of the revised statute. The Court reasoned that preserving a right of retroactive termination for private insurers would be "utterly inconsistent" with the public policy behind the statutory overhaul, which called for compulsory automobile insurance in Maryland. If private insurers were allowed to retroactively void policies, there would be potentially long periods of time during which the misrepresenting individual would be uninsured. This would fly in the face of the legislature's goal of mandatory motor vehicle insurance. The Court found significant the fact that MAIF was "waiting in the wings" to insure such individuals.

MAIF's position is fundamentally different than that of private insurers in this regard. MAIF is an insurer of last resort. There is no other insurer "waiting in the wings" to insure individuals ineligible for a MAIF policy. Therefore, voiding a MAIF policy from the date of its inception does not offend the purpose of the statute. If anything, it is consistent with MAIF's statutory mandate to insure only "eligible" drivers. We also agree with MAIF that the legislature did not intend to subsidize insurance for out-of-state drivers having no connection to Maryland. MAIF's strict policy eligibility requirements make this clear. *See* IN § 20–502(b); *infra* note 5.

We do not find persuasive Janquitto's interpretation of the statute, which Lumbermen's urges us to adopt. First, as MAIF points out, Janquitto explains that "[a]t common law, a party to a contract had to rescind within a reasonable time **after discovering the misrepresentation.**" *See Janquitto, supra,* § 20.5(C) at 840. According to Janquitto, the 60-day period in the "cancellation" provision "is the legislature's way of determining a reasonable time." *See id.* Under Janquitto's interpretation of the statute, however, the 60-day period guides regardless of whether the misrepresentation has been "discovered." This is inconsistent with his theory that this 60-day period arose from the common law "reasonable time" limitation.

We also disagree with Janquitto's suggestion that the Court of Appeals' decision in *Van Horn* affects MAIF''s treatment of policies obtained through intentional misrepresentation. As we have explained extensively above, the reasons relied on by the *Van Horn* Court in holding that the right of **private** insurers to declare void *ab initio* their policies had been abrogated does not extend to MAIF. We find the interpretation laid out in the 2000 Attorney General's Opinion more consistent with the plain language of the statute, its legislative history, and common sense.

■■ In conclusion, we agree with MAIF and the 2000 Attorney General's Opinion that IN sections 20–502(e) and 20–509(e) can be harmonized in the following manner. If, upon review of a policy application, MAIF finds that, based on the information provided in the application, the applicant is ineligible, and the policy has already been bound, MAIF may **cancel** the policy **prospectively** under section 20–509(e), but only within 60 days of the date on which coverage was bound. Under section 20–502(e), however, MAIF is compelled to treat a policy as void *ab initio* when it discovers that the applicant intentionally misrepresented information material to eligibility for that policy, regardless of when such discovery occurs. This is because section 20–502(e) is a legislative declaration

that any policy obtained through intentional misrepresentation "is void" from its inception as a matter of law.

**JUDGMENT REVERSED. SUMMARY JUDGMENT IN FAVOR OF LUMBERMEN'S VACATED. CASE REMANDED FOR ENTRY OF JUDGMENT IN FAVOR OF MAIF. COSTS TO BE PAID BY LUMBERMEN'S.**